IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ISAAC A., by and through next friend, A.A.; ZACK B., by and through next friend, B.B.; LEON C., by and through next friend, C.C.; SAMUEL D., by and through next friend, D.D., on behalf of themselves and those similarly situated; and THE GEORGIA ADVOCACY OFFICE,<br><br>     Plaintiffs,<br><br>v.<br><br>RUSSEL CARLSON, in his official capacity as Commissioner of the Georgia Department of Community Health; KEVIN TANNER, in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities; CANDICE L. BROCE, in her official capacity as Commissioner of the Georgia Department of Human Services,<br><br>     Defendants. | Civil Action No. 1:24-cv-00037-AT |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................1

II. THE INDIVIDUAL PLAINTIFFS HAVE STANDING..............................2

    A. Plaintiffs Allege Injury in Fact.................................................3

    B. Plaintiffs' Injuries Are Traceable to Defendants' Conduct .................6

    C. Plaintiffs' Injuries Are Manifestly Redressable ....................................8

    D. Defendants' Prudential Standing Argument Is Unfounded ...............11

III. GAO HAS ASSOCIATIONAL STANDING .................................................12

IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY ELEVENTH AMENDMENT OR SOVEREIGN IMMUNITY .........................................15

V. PLAINTIFFS STATE MEDICAID ACT CLAIMS THAT ARE ENFORCEABLE AGAINST DEFENDANT CARLSON ...........................19

    A. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396a(a)(8) Are Enforceable Against Defendant Carlson .....................................19

        1. Plaintiffs' claims may proceed against Defendant Carlson......19

        2. Spending Clause enactments can create rights "secured" against the State .......................................................................20

        3. The Medicaid provisions create enforceable rights via § 1983..........................................................................................20

        4. Requiring compliance with the Medicaid provisions is not commandeering ........................................................................25

    B. Plaintiffs State Claims Under 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396a(a)(8) Against Defendant Carlson .........28

        1. Plaintiffs established their need for the Remedial Services ..................................................................................28

2.     Courts have repeatedly rejected a "screen request" requirement to state a § 1396a(a)(43)(C) claim .........................32

3.     Defendants' challenge to Plaintiffs' § 1396a(a)(10) claim merely repeats their previous arguments ...................................34

4.     Defendants' challenges to Plaintiffs' § 1396a(a)(8) claims lack merit....................................................................................35

VI.   PLAINTIFFS STATE ADA AND SECTION 504 CLAIMS AGAINST DEFENDANTS CARLSON, TANNER, AND BROCE .............................35

A.     Plaintiffs' Claims for Reasonable Modification of the Existing Service System Are Sufficient to State a Claim Under the ADA and Section 504 ...................................................................................36

B.     Plaintiffs' Allegations State an *Olmstead* Claim, Including the Extent to Which They Are Qualified For, Need, and Would Prefer to Receive Services in the Community .....................................38

C.     Plaintiffs Have Stated a Cognizable At-Risk Claim ..........................44

D.     Plaintiffs Properly State a Claim for Disability Discrimination .........47

E.     The Requested Relief Is Not a Fundamental Alteration ....................48

VII.   PLAINTIFFS' COMPLAINT SATISFIES RULE 8 .....................................49

VIII.  CONCLUSION.............................................................................................50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015)..............................................................................22

*Baughcum v. Jackson*,
   92 F.4th 1024 (11th Cir. 2024) ...........................................................13

*Bontrager v. Ind. Fam. & Soc. Servs. Admin.*,
   697 F.3d 604 (7th Cir. 2012) ..............................................................23

*Boyd v. Steckel*,
   753 F. Supp. 2d 1163 (M.D. Ala. 2010) .............................................41

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ..............................................................31

*Burban v. City of Neptune Beach*,
   920 F.3d 1274 (11th Cir. 2019) ....................................................22, 24

*C.A. ex rel. P.A. v. Garcia*,
   673 F. Supp. 3d 967 (S.D. Iowa 2023) ...........................................2, 34

*Carten v. Kent State Univ.*,
   282 F.3d 391 (6th Cir. 2002) ..............................................................15

*Competitive Enter. Inst. v. Fed. Commc'ns. Comm'n*,
   970 F.3d 372 (D.C. Cir. 2020)............................................................10

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005) ..............................................................15

*Covington v. Gifted Nurses, LLC*,
   No. 1:22-cv-4000-VMC, 2023 WL 5167366 (N.D. Ga. July 19,
   2023) ....................................................................................................31

*Davis v. Shah*,
   821 F.3d 231 (2d Cir. 2016) ..................................................45, 46, 48

iv

*Dep't of Comm. v. New York*
   139 S. Ct. 2551 (2019) ................................................................................10

*Dep't of Educ. v. Brown*,
   600 U.S. 551 (2023) ..............................................................................5, 6

*Disability Advocs., Inc. v. Paterson*,
   653 F. Supp. 2d 184 (E.D.N.Y. 2009), *vacated on other grounds*
   *sub nom. Disability Advocs., Inc.* v. *New York Coal. for Quality*
   *Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012) ............................................42

*Doe 1-13 ex rel. Doe Sr. 1-13 v. Chiles*,
   136 F.3d 709 (11th Cir. 1998) ............................................................4, 21, 22

*Doe v. Kidd*,
   419 F. App'x 411 (4th Cir. 2011), *reaff'g,* 501 F.3d 348, 356-57
   (4th Cir. 2007) ...........................................................................................22

*Doe v. Stincer*,
   175 F.3d 879 (11th Cir. 1999) ...................................................................14

*Does v. Gillespie*,
   867 F.3d 1034 (8th Cir. 2017) ...................................................................25

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.,*
   797 F.3d 1248 (11th Cir. 2015) .................................................................11

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004).................................................................................11, 12

*Ex Parte Young*,
   209 U.S. 123 (1908).............................................................................*passim*

*Fisher v. Okla. Health Care Auth.*,
   335 F.3d 1175 (10th Cir. 2003) .............................................................44, 45

*Fla. Ass'n of Rehab. Facilities, Inc. v. Dep't of Health & Rehab.*
   *Servs.*,
   225 F.3d 1208 (11th Cir. 2000) .................................................................18

*Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*,
   450 U.S. 147 (1981)...................................................................................18

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
344 F.3d 1263 (11th Cir. 2003) ........................................................... 8

*Frederick L.* v. *Dep't of Pub. Welfare*,
364 F.3d 487 (3d Cir. 2004) ...............................................................39

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002).................................................................21, 22, 23

*Green v. Monsour*,
474 U.S. 64 (1985)..............................................................................16

*H.E. ex rel. William v. Horton*,
No. 1:15-cv-3792-WSD, 2016 WL 6582682 (N.D. Ga. Nov. 7,
2016) ..............................................................................................22, 23

*Haddad v. Dudek*,
784 F. Supp. 2d 1308 (M.D. Fla. 2011)............................................. 48

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)....................................................................*passim*

*Heckler v. Mathews*,
465 U.S. 728 (1984)..........................................................................4, 5

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2nd Cir. 2003) .......................................................15, 36

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F.4th 1236 (11th Cir. 2022) ............................................................4

*Hunter ex rel. Lynah v. Cook*,
No. 1:08-CV-2930-TWT, 2011 WL 4500009 (N.D. Ga. Sept. 27,
2011) ..............................................................................................45, 46

*Hunter ex rel. Lynah v. Medows*,
No. 1:08-cv-2930-TWT, 2009 WL 5062451 (N.D. Ga. Dec. 16,
2009) ...................................................................................................23

*Jacobson v. Florida Sec'y of State*,
974 F.3d 1236 (6th Cir. 2010) ...........................................................17

vi

*John B. v. Goetz,*
　626 F.3d 356 (6th Cir. 2010) ...............................................................23

*Jonathan R. v. Justice,*
　344 F.R.D. 294 (S.D. W. Va. 2023) ...................................................45

*Katie A. ex rel. Ludin v. Douglas,*
　481 F.3d 1150 (9th Cir. 2007) .............................................................2

*Kenneth R. ex rel. Tri-Cnty. CAP, Inc. v. Hassan,*
　293 F.R.D. 254 (D.N.H. 2013) ......................................................42, 45

*Kenny A. ex rel. Winn v. Perdue,*
　218 F.R.D. 277 (N.D. Ga. 2003) .......................................................23

*King v. Smith,*
　392 U.S. 309 (1968).............................................................................27

*L.C. ex rel. Zimring v. Olmstead,*
　138 F.3d 893 (11th Cir. 1998), *aff'd in relevant part, vacated in
　relevant part on other grounds*, 527 U.S. 581 (1999) .......................39

*L.E. ex rel. Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.,*
　55 F.4th 1296 (11th Cir. 2022) ..........................................................48

*Lane v. Kitzhaber,*
　841 F. Supp. 2d 1199 (D. Or. 2012) ..................................................43

*Lane v. Kitzhaber,*
　283 F.R.D. 587 (D. Or. 2012)............................................................43

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
　572 U.S. 118, 125-26 (2014) ..............................................................11

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.,*
　148 F.3d 1231 (11th Cir. 1998) ...........................................................8

*Lonergan v. Fla. Dep't of Corr.,*
　623 Fed. Appx. 990 (11th Cir. 2015)..................................................15

*Long v. Benson,*
　No. 08-0026, 2008 WL 4571904 (N.D. Fla. 2008) ............................40

vii

*Luckey v. Harris*,
   860 F.2d 1012 (11th Cir. 1988) ........................................................................17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................4, 5, 8

*M.H. v. Reese*,
   No. 1:15-cv-1427-TWT, 2015 WL 7283174 (N.D. Ga. Nov. 16,
   2015) ..............................................................................................................50

*M.J. v. District of Columbia*,
   401 F. Supp. 3d 1 (D.D.C. 2019) ...........................................................*passim*

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ..........................................................................45

*Maine v. Thiboutot*,
   448 U.S. 1 (1980) ......................................................................................20, 27

*Makin ex rel. Russel v. Hawaii*,
   114 F. Supp. 2d 1017 (D. Haw. 1999) .............................................................45

*Martin v. Taft*,
   222 F. Supp. 2d 940 (S.D. Ohio 2002) ............................................................49

*McCarthy ex rel. Travis v. Hawkins*,
   381 F.3d 407 (5th Cir. 2004) ..........................................................................15

*McClendon v. Ga. Dep't. of Comm. Health*,
   261 F.2d 1252 (11th Cir. 2001) ......................................................................18

*Meza ex rel. Hernandez v. Marstiller*,
   2023 WL 2648180 (M.D. Fla. Mar. 27, 2023) ................................................ 46

*Miller v. King*,
   449 F.3d 1149 (11th Cir. 2006) ......................................................................15

*Miller v. King*,
   384 F.3d 1248 (11th Cir. 2004) ......................................................................15

*Miranda B. v. Kitzhaber*,
   328 F.3d 1181 (9th Cir. 2003) ........................................................................15

*Moore ex rel. Moore v. Reese*,
  637 F.3d  1220 (11th Cir. 2011) ............................................................9, 10, 32

*Mulhall v. UNITE HERE Loc. 355*,
  618 F.3d 1279 (11th Cir. 2010) ...........................................................................9

*N.B. v. Hamos*,
  No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013) .................2, 37, 43

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*,
  633 F.3d 1297 (11th Cir. 2011) ........................................................................16

*Nat'l Fed'n of Bus. v. Sebelius*,
  567 U.S. 519 (2012)..........................................................................................25

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999).................................................................................*passim*

*Oster v. Lightbourne*,
  No. C 09-4668 CW, 2012 WL 685808 (N.D. Cal. Mar. 2, 2012).....................45

*Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*,
  934 F.3d 13 (1st Cir. 2019)................................................................................14

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ............................................................................45

*Ped. Specialty Care, Inc. v. Ark. Dept. of Hum. Servs.*,
  293 F.3d 472 (8th Cir. 2002) ......................................................................23, 24

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981)..............................................................................................26

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)............................................................................................18

*Pinson v. JPMorgan Chase Bank, N.A.*,
  942 F.3d 1200 (11th Cir. 2019) ..................................................................49, 50

*Planned P'hood of Kan. v. Andersen*,
  882 F.3d 1205 (10th Cir. 2018) ........................................................................22

*Planned P'hood of S. Atl. v. Kerr,*
    95 F.4th 152 (4th Cir. 2024) .........................................................................21, 25

*Quern v. Jordan,*
    440 U.S. 332 (1979)...................................................................................18

*Radaszewski ex rel. Radaszewski v. Maram,*
    383 F.3d 599 (7th Cir. 2004) .............................................................15, 39, 43

*Randolph v. Rodgers,*
    253 F.3d 342 (8th Cir. 2001) ...........................................................................15

*Resnick v. AvMed, Inc.,*
    693 F.3d 1317 (11th Cir. 2012) .......................................................................7

*Rodriguez v. City of New York,*
    197 F.3d 611 (2nd Cir.1999), *cert. denied,* 531 U.S. 864 (2000) .....................37

*Romano v. Greenstein,*
    721 F.3d 373 (5th Cir. 2013) ..........................................................................22

*Rosado v. Wyman,*
    397 U.S. 397 (1970)...................................................................................27

*Rosie D. ex rel. John D. v. Swift,*
    310 F.3d 230 (1st Cir. 2002)........................................................................2, 17

*Rosie D. v. Romney,*
    410 F. Supp. 2d 18 (D. Mass. 2006)..................................................2, 9, 31, 34

*S.D. ex rel. Dickson v. Hood,*
    391 F.3d 585 (5th Cir. 2004) .........................................................................23

*S.R. ex rel. Rosenbauer v. Pa. Dep't of Human Servs.,*
    309 F. Supp. 3d 250 (M.D. Pa. 2018)..................................................................2

*Sabree ex rel. Sabree v. Richman,*
    367 F.3d 180 (3d Cir. 2004) .....................................................................22, 23

*Shavelson v. Bonta,*
    608 F. Supp. 3d 919 (N.D. Cal. 2022)................................................................49

x

*Sierra v. City of Hallandale Beach*,
  996 F.3d 1110 (11th Cir. 2021) ............................................................4

*Stanton v. Bond*,
  504 F.2d 1246 (7th Cir. 1974) ....................................................33, 34

*Steimel v. Wernert*,
  823 F.3d 902 (7th Cir. 2016) ....................................................*passim*

*Steward v. Abbott*,
  189 F.Supp.3d 620 (W.D. Tex. 2016) ...............................................45

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326, 1336 (11th Cir.1999) ................................................16

*Tamiami Partners, Ltd. ex rel. Tamiami Dev't. Corp. v. Miccosukee
  Tribe of Indians*,
  177 F3d 1212 (11th Cir. 1999) ..........................................................18

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ..........................................................................15

*Timothy B. v. Kinsley*,
  No. 1:22-cv-1046, slip. Op. at 18 (M.D.N.C. Mar. 29, 2024) .............7

*Townsend v. Quasim*,
  328 F.3d 511 (9th Cir. 2003) ..............................................36, 37, 39

*Troupe v. Barbour*,
  No. 10-CV-153, 2013 WL 12303126 (S.D. Miss. Aug. 23, 2013) ....34

*United States v. Florida*,
  No. 12-cv-60460, 2023 WL 4546188 (S.D. Fla. July 14, 2023) ...............*passim*

*United States v. Georgia*,
  546 U.S. 151 (2006) ....................................................................15, 19

*United States v. Georgia*,
  461 F. Supp. 3d 1315 (N.D. Ga. 2020) .......................................40, 46

*United States v. Mississippi*
  82 F.4th 387 (5th Cir. 2023) .......................................................46, 47

xi

*Van Meter v. Harvey*,
    272 F.R.D. 274 (D. Me. 2011) ............................................................ 43

*Vote.org v. Ga. State Election Bd.*,
    661 F. Supp. 1329 (N.D. Ga. 2023) ...................................................32

*Walters v. Fast AC*, LLC
    60 F.4th 642 (11th Cir. 2023) .............................................................7

*Waskul v. Washtenaw Co. Cmty. Mental Health*,
    979 F.3d 426 (6th Cir. 2020) .........................................22, 23, 43, 45

*Watson v. Weeks*,
    436 F.3d 1152 (9th Cir. 2006) ..........................................................23

*Whitmore v. Ark.*,
    495 U.S. 149 (1989).............................................................................12

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)........................................................................19, 20

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ....................................................5, 6

*Wright v. Roanoke Redev. & Hous. Auth.*,
    479 U.S. 418 (1987)............................................................................22

## Constitution

U.S. Const. Amend. XI ...........................................................................14

U.S. Const. Amend. XIV ........................................................................14

## Statutes

29 U.S.C. § 794...........................................................................7, 16, 35

42 U.S.C. § 1304........................................................................................26

42 U.S.C. § 1320a-2..................................................................................25

42 U.S.C. § 1983...........................................................................*passim*

42 U.S.C. § 1396a ..................................................................................*passim*

42 U.S.C. § 1396d ..................................................................................*passim*

42 U.S.C. § 12131 ....................................................................................35, 39

42 U.S.C. § 12132 ....................................................................................35, 39

42 U.S.C. § 12202 ..........................................................................................15

O.G.C.A. § 37-1-20 .......................................................................................17

O.G.C.A § 49-4-14 .........................................................................................17

O.G.C.A. § 49-5-8 ..........................................................................................18

Social Security Act of 1965, Pub. L. No. 89-97, § 121, 79 Stat. 343
   (1965) ........................................................................................................26

Social Security Act Amendments of 1967, Pub. L. No. 90-248, §
   302(a), 81 Stat. 929 (1967) ......................................................................27

## Rules & Regulations

Fed. R. Civ. P. 8 .....................................................................................49, 50

28 C.F.R. § 35.130 ...............................................................36, 38, 40, 44, 47

28 C.F.R. § 41.51 ...........................................................................................36

42 C.F.R. § 431.10 .........................................................................................17

## Other Authorities

Centers for Medicare & Medicaid Services, EPSDT-A Guide for
   States: Coverage in the Medicaid Benefit for Children and
   Adolescents (June 2014), *A Guide for States: Coverage in the
   Medicaid Benefit for Children and Adolescents (hhs.gov)*................................33

U.S. Dep't of Justice, Statement on Enforcement of the Integration
Mandate of Title II of the Americans with Disabilities Act and
*Olmstead v. L.C.* (Feb 28, *2020),*
*https://www.ada.gov/resources/olmstead-mandate-statement/*..........................41

## I.      INTRODUCTION

There is an acknowledged and ongoing crisis in Georgia's children's mental health system. Every day, Medicaid-enrolled children with significant mental health needs are deprived of necessary services in their homes and communities and subjected to unnecessary institutionalization because Defendants systemically fail to provide three services that children urgently need and are entitled to receive under federal law—Intensive Care Coordination, Intensive In-Home Services, and Mobile Crisis Response Services ("the Remedial Services"). Though urgent for low-income children in Georgia, this action does not raise novel legal questions. In recent years, at least ten similar federal lawsuits across the country have resulted in settlement agreements or court orders requiring the provision of these Remedial Services for Medicaid-eligible children and youth.

Rather than modify their mental health service system to meet the current requirements of the Medicaid Act, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), Defendants filed a Motion to Dismiss disclaiming any responsibility for Plaintiffs' plight. ECF 32. Defendants' Memorandum in Support of the Motion to Dismiss, ECF 32-1 ("Mem.") never substantively connects the facts as pleaded with prevailing law in any way that justifies granting their Motion. In fact, they rely on cases that support denying their Motion. They urge the Court to revisit questions the Supreme Court and Eleventh

Circuit have clearly settled and, in parts of their Memorandum, urge the Court to adopt minority and other long-rejected positions.

Defendants claim six independent reasons for dismissal, but none compel this result. As shown below, Plaintiffs have standing and properly plead their Complaint. They state valid, and frequently enforced claims for relief under the Medicaid Act, the ADA, and Section 504. Sovereign immunity does not shield Defendants from injunctive relief to end their ongoing violations. And the U.S. Congress is not commandeering the State of Georgia. For the reasons set forth below, the Motion should be denied in its entirety.

## II.   THE INDIVIDUAL PLAINTIFFS HAVE STANDING.

Defendants argue that Plaintiffs lack Article III standing. This, however, is not the first case in which Medicaid-eligible children with serious mental health conditions have sued responsible state officials to obtain intensive mental health services and end their unnecessary institutionalization under the Medicaid Act, the ADA, and Section 504. *See, e.g.*, *Katie A. ex rel. Ludin v. Douglas*, 481 F.3d 1150 (9th Cir. 2007); *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230 (1st Cir. 2002); *C.A. v. Garcia*, 673 F. Supp. 3d 967 (S.D. Iowa 2023); *M.J. v. District of Columbia*, 401 F. Supp. 3d 1 (D.D.C. 2019); *S.R. ex rel. Rosenbauer v. Pa. Dep't of Hum. Servs.*, 309 F. Supp. 3d 250 (M.D. Pa. 2018); *N.B. v. Hamos*, No. 11 C 06866, 2013 WL 6354152 (N.D. Ill. Dec. 5, 2013). If Defendants are correct that their failure to

provide the Remedial Services and reliance on Psychiatric Institutionalization causes Plaintiffs no Article III injury, courts should have dismissed these cases. But they did not. Defendants' arguments lack merit.

### A.   Plaintiffs Allege Injury in Fact.

Defendants wrongly contend that Plaintiffs lack standing to seek *all three* Remedial Services, arguing that Mobile Crisis Response Services applies to ongoing emergencies that Plaintiffs fail to plead. Mem. 20. The Remedial Services consist of three complementary services that work together. Compl. ¶¶ 1, 148, 162, 171-74. Plaintiffs are children with Serious Emotional Disturbance ("SED") who need the Remedial Services at various points in time to effectively treat their chronic mental health conditions so they can exit or avoid Psychiatric Institutions and live in integrated settings. *Id*. ¶¶ 5, 182-92. Because Defendants do not provide the Remedial Services, Plaintiffs' conditions have *deteriorated*. *Id*. ¶¶ 26-29, 33, 38-41, 43, 49-51, 54, 59-64. Defendants' failure to make all three services available to Plaintiffs results in an ongoing, serious, impending risk of acute mental health crises that lead to unnecessary institutional care. *Id*. ¶¶ 2, 26-31, 38-41, 49-53, 59-63. This causal connection between unmet treatment needs (due to the unavailability of the Remedial Services) and institutionalization is precisely why Plaintiffs have standing to seek the three clinically appropriate Remedial Services. *Id*. ¶ 1 (citing Informational Bulletin at 1-5), 2, 182-92.

Defendants also incorrectly argue that Plaintiffs lack standing because they allege a generalized grievance that is not concrete or particularized. Mem. 20. An injury is "concrete" for purposes of Article III if it is "real, and not abstract." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (citation omitted). It is settled that harms suffered by Medicaid enrollees when a Medicaid agency fails to provide required services satisfy Article III's concrete injury requirement. *See, e.g.*, *Doe 1-13 ex rel. Doe Sr. 1-13 v. Chiles*, 136 F.3d 709, 712, 712 n.7 (11th Cir. 1998) ("injury resulting from [the] failure to provide Medicaid services in a timely manner" is concrete and particularized). It is also settled that discriminatory governmental action that results in noneconomic injury causes a sufficiently concrete injury. *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984); *see also Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1113 (11th Cir. 2021) (deaf individual suffered a concrete injury when city failed to provide closed captions on posted videos).

Defendants' argument that Plaintiffs' injuries are not particularized because there are thousands of similarly situated young Georgians with SED is profoundly flawed. Mem. 21; Compl. ¶ 200 (class definition). It conflates injuries common to a class of *similarly situated litigants* with harms that are "undifferentiated and common to *all members of the public*." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992) (emphasis added). Defendants' argument is that there are too many Medicaid-

4

eligible children with SED who do not receive the Remedial Services and experience institutionalization for Plaintiffs' injuries to be "particularized." Mem. 21. Ironically, this argument emphasizes the magnitude of the harm caused by Defendants' conduct; it does nothing to demonstrate that Plaintiffs' injuries are not "particularized" because they are shared with members of Georgia's *public* (who are not similarly situated class members).

Defendants' reliance on *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), and *Department of Education v. Brown*, 600 U.S. 551, 563-64 (2023), is misplaced. Mem. 20-21. In *Wood*, the plaintiff voter argued that even though he did not personally attempt to observe ballot counting, his interest in "ensuring that only lawful ballots are counted" furnished Article III standing to challenge election officials' limitation of observation access. *Id*. at 1312. The Court disagreed: Mr. Wood "assert[ed] only a generalized grievance" because "an injury to the right 'to require that the government be administered according to the law'" is not particularized. *Id*. at 1314 (quoting *Lujan*, 504 U.S. at 575). This case is nothing like *Wood*. Here, Defendants' failure to comply with the Medicaid Act, the ADA, and Section 504 violates Plaintiffs' *personal rights*, *i.e*., a Medicaid beneficiary's right to receive medically necessary services, *cf. Heckler*, 465 U.S. at 738-9, and the right to receive services in integrated settings, *see Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 587 (1999). The *Wood* Court itself acknowledged this difference by

5

distinguishing Mr. Wood's generalized interest from "a political candidate harmed by the recount," who "could assert a personal, distinct injury." *Id*. at 1314. *Wood* confirms that Plaintiffs have standing.

*Brown*, 600 U.S. 551, likewise confirms that Plaintiffs' injuries are not "generalized." In *Brown*, borrowers challenged a loan forgiveness plan that excluded their commercially held loans and denied them debt relief. *Id*. at 558-59. The *Brown* plaintiffs lacked standing because their claimed injury was caused by the government's failure to adopt a new benefits program for which they could qualify. *Id*. at 564. Here, Plaintiffs are Medicaid beneficiaries that are *presently* entitled to receive medically necessary services under the Medicaid Act's *existing* provisions.[1] They do not seek to expand Medicaid nor compel the adoption of an entirely new benefits program. Accordingly, Plaintiffs' interests are concrete and particularized, not generalized grievances.

### B.    Plaintiffs' Injuries Are Traceable to Defendants' Conduct.

Defendants wrongly argue that Plaintiffs' injuries are not fairly traceable to their conduct because Plaintiffs rely on Defendants' "regulatory responsibilities," and their injuries are caused by Plaintiffs' physicians. Mem. 22-23. While standing requires Plaintiffs' injuries to be "fairly traceable to the challenged action of the

---

[1] Defendants' flawed argument that Plaintiffs have failed to allege medical necessity is discussed in Section V.B.1, *infra*.

defendant, and not the result of the independent action of some third party not before the court," traceability is not an "exacting standard." *Walters v. Fast AC*, LLC, 60 F.4th 642, 650 (11th Cir. 2023) (citation omitted). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc*., 693 F.3d 1317, 1324 (11th Cir. 2012); *Timothy B. v. Kinsley*, No. 1:22-cv-1046, slip. op. at 18 (M.D.N.C. Mar. 29, 2024) (plaintiffs adequately alleged causal connection between agency's conduct and their unnecessary segregation in psychiatric residential treatment facilities).

Defendants' "regulatory responsibilities" argument mischaracterizes their statutory authority and obscures the direct relationship between their actions and inactions and Plaintiffs' injuries. Defendant Carlson is Commissioner of Georgia's single state Medicaid agency. Compl. ¶ 71. He is responsible for ensuring that: (1) medically necessary mental health services are arranged for or provided to Medicaid-eligible children who need them, and (2) DCH's policies and procedures, including the medical necessity standards it sets for Medicaid-enrolled physicians, comply with the Medicaid Act, the ADA, Section 504, and their regulations. He has ensured neither. *Id*. ¶¶ 15, 71-3, 87-90, 115-34, 145-96; *Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016). All Defendants are responsible for ensuring that programs and services they provide comply with the ADA and Section 504. None have done so. Compl. ¶¶ 11-14, 73, 75-6, 79, 87, 115-34, 145-96. This is not merely a failure

of "regulatory responsibilities," it is a systemic violation of federal law. Moreover, the Eleventh Circuit recognizes that injuries caused by routine state action satisfy Article III's traceability requirement. *See Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (transit authority's contract with bus shelter operator established authority's "fairly traceable connection" to injury of organization challenging operator's contract-based denial of advertisement).

Finally, Defendants' claim that treating physicians, and not Defendants, cause Plaintiffs' injuries is ineffectual. Mem. 23-24. It is well settled that "standing is *not* defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1247-49 (11th Cir. 1998) (emphasis added) (citing *Lujan*, 504 U.S. at 560) (finding an environmental group had standing because there was "sufficient causal connection" between the city council's decision to exempt certain beaches from light pollution restrictions and the resulting harm to wildlife even though the connection was indirect). The actions of treating professionals here do *not* sever the connection between Defendants' failure to make the Remedial Services available and the resulting harm experienced by Plaintiffs for purposes of Article III.

## C. Plaintiffs' Injuries Are Manifestly Redressable.

Defendants argue that Plaintiffs' injuries are not redressable through the injunctive relief sought here because Plaintiffs will only receive the services "if their

physician prescribes them." Mem. 23-24. But redressability exists "when a favorable decision 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (citations omitted). Defendants' argument confuses the role of a treating clinician to assess a patient's need with the obligation of the State Medicaid agency to arrange or provide for all medically necessary services, which contemplates the agency's adoption of medical necessity criteria to guide clinical assessments. *Cf.* 42 U.S.C. § 1396d(r)(5) (requiring coverage of treatment needed to correct or ameliorate children's conditions); *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 45 (D. Mass. 2006) (noting clinicians' hesitation to prescribe services that have no Medicaid billing codes).

Defendants' reliance on *Moore ex rel. Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011), is misplaced. Mem. 23-24. In contrast to *Moore*, where DCH denied available and physician-ordered services, Plaintiffs allege that the medically necessary services sought here are either intentionally made unavailable by Defendants or not provided as needed by Plaintiffs to treat their SED because Defendants have failed in their duties. Compl. ¶¶ 145-81. Moreover, *Moore* forecloses Defendants' attempt to grant physicians unfettered decision-making authority:

> [T]he Medicaid Act does not give the treating physician unilateral discretion to define medical necessity so long as the physician does not violate the law or breach ethical duties any more than it gives such discretion to the state *so long as the state does not refuse to provide a required service outright*. It is a false dichotomy to say that one or the other, the state's medical expert or the treating physician, must have complete control, or must be deferred to, when assessing whether a service or treatment is medically necessary under the Medicaid Act.

*Id.*, 637 F.3d at 1259–60 (emphasis added); *see United States v. Florida*, No. 12-cv-60460, 2023 WL 4546188, at *12 (S.D. Fla. July 14, 2023) (rejecting state's theory that redressability was unavailable to plaintiffs challenging State's provision of Medicaid services despite defendant's assertion of "third party action" doctrine), *appeal filed*, No. 23-12331 (11th Cir. July 17, 2023), *stay pending appeal denied*, No. 12-60460-CV, 2023 WL 4763189 (S.D. Fla. July 25, 2023).

Finally, Defendants' speculative claim that physicians *might* not recommend the Remedial Services for Plaintiffs does not defeat standing. "A permissible theory of standing 'does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties.'" *Competitive Enter. Inst. v. Fed. Commc'ns. Comm'n*, 970 F.3d 372, 381 (D.C. Cir. 2020) (quoting *Dep't of Com. v. New York,* 139 S. Ct. 2551 (2019)), *reconsideration dismissed*, Nos. DA23-872, MB15-149, 2024 WL 6194057 (F.C.C. Sept. 19, 2023). The predictable effect of Defendants' coverage of the Remedial Services and adoption of corresponding medical necessity criteria is that Medicaid-

enrolled clinicians will follow those criteria as a general rule. Defendants must ensure that they do. *See* 42 U.S.C. §§ 1396a(a)(5), 1396u-2 (agency responsible for ensuring compliance with program requirements); *cf*. Compl. ¶¶ 88-90, 115-34.

### D. Defendants' Prudential Standing Argument Is Unfounded.

The Complaint demonstrates that the Next Friends are dedicated to their minor children's best interests (Compl. ¶¶ 29-32, 39, 42-3, 50, 53, 60, 62-3), have significant relationships with them (*Id*. ¶¶ 22, 30-2, 34, 39, 42-3, 45, 48, 50, 53, 55-6, 58, 60, 62-3), and are advocating for their access to necessary services in the least restrictive setting. Nothing more is required to qualify the Next Friends to bring this action on behalf of their children.

Moreover, Defendants' prudential standing argument rests on the slippery slope of *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1 (2004). Mem. 24-26. As the Eleventh Circuit recognized in *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc*., 797 F.3d 1248, 1273 n.6 (11th Cir. 2015), since *Newdow*, the Supreme Court has cast considerable doubt on the propriety of a federal court declining to exercise its jurisdiction on prudential grounds. *See Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125-26 (2014) (invoking the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging). Moreover, even if *Newdow*'s vitality were not suspect, Defendants' effort to analogize the mothers of Isaac A. and Zack B. to the non-custodial father

11

in *Newdow* because a state agency has temporary custody, in order to manufacture an alleged "domestic relations" issue, ignores the reality that the Next Friends are the respective parents committed to Isaac A.'s and Zack B.'s welfare.  In short, there is no dispute here among parents that could give rise to a domestic relations issue.[2]

## III.   GAO HAS ASSOCIATIONAL STANDING.

The Complaint is filed by four children "by and through" their next friend *and* GAO.[3] Compl. p. 1 (caption), ¶ 6. GAO is a private, non-profit Georgia corporation, designated as Georgia's statewide Protection and Advocacy System (P&A) since 1977, with the authority and obligation under federal law to pursue legal remedies for people with disabilities. *Id.* ¶¶ 66-70. "The Individual Plaintiffs and members of the proposed class are constituent members of GAO," who "have suffered harms" traceable to Defendants' conduct, and have standing to sue. *Id.* ¶ 69; *see also id.* ¶¶ 6, 22-64, 66-70.

GAO satisfies Article III's "case or controversy" requirement for associational standing because: (1) its members have standing to sue; (2) the interests

---

[2] Even if the prudential standing doctrine had not been discredited, it would be satisfied even when minors are in state custody if next friends can fulfill three criteria: (1) the next friend must provide an adequate explanation as to why the real parties in interest cannot bring the suit themselves; (2) the next friend must be dedicated to minors' best interests; and (3) the next friend must have some significant relationship with the minors. *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990). Plaintiffs clearly satisfy each of these prongs.

[3] Defendants are wrong that "[t]he Georgia Advocacy Office filed this lawsuit on behalf of four individuals and unidentified 'children.'" Mem. 4.

the lawsuit seeks to protect are germane to GAO's purpose; and, (3) the claim can be resolved and relief granted without the participation of individual members. *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024).

Both of Defendants' challenges to GAO's associational standing are unfounded. Mem. 26-28. First, GAO's purported failure to identify constituents who can sue in their own right ignores the allegations quoted above. Second, Defendants' argument that this suit requires GAO's constituents' individual participation mischaracterizes Plaintiffs' claims and the relief that they seek.

As an initial matter, Defendants wrongly suggest that adjudication of Plaintiffs' claims requires individualized proof. The requested systemic relief does not call for, or require the Court to make, individualized evaluations of Plaintiffs' needs or changes to treatment plans and the services authorized within them. Rather, the Individual Plaintiffs, together with GAO, seek systemic modifications that would benefit the class[4] as a whole by making necessary services promptly available to children who need them. This relief would then enable their own treatment professionals and care coordination teams to comprehensively assess, refer, and arrange for their service needs, pursuant to regulations that allow administrative appeals if decisions are deemed questionable. 42 U.S.C. §1396a(a)(3). Specifically,

---

[4] Because "members of the proposed class are constituent members of GAO," Compl. ¶ 69, the Individual Plaintiffs and GAO represent all putative class members.

13

GAO constituents seek systemic—not individual—relief through the provision of three Remedial Services, delivered in a coordinated way, and reasonable modifications to the service system that will facilitate their access to integrated services in the community, as required by the Medicaid Act, ADA, and Section 504.[5]

Defendants similarly err in suggesting that the *Olmstead* decision demands an individualized determination of appropriateness to state a claim under the ADA's integration mandate. Mem. 22. This position runs contrary to decades of class action litigation applying *Olmstead*'s factors to similarly situated individuals with disabilities and approving class wide injunctive relief. *See* Section VI.B., *infra*.

Finally, this Circuit's long-standing jurisprudence on associational standing makes clear that "the third prong of the associational standing test is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case and controversy within the meaning of the Constitution." *Doe v. Stincer*, 175 F.3d 879, 883 (11th Cir. 1999) (citation omitted). This prudential requirement is therefore not essential to Article III standing and can be eliminated by Congress. *Id*. It does not require federal Protection and Advocacy systems like GAO to identify a specific individual in order to have standing to vindicate the rights of its

---

[5] Defendants' reliance on *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13 (1st Cir. 2019), is misplaced. The unique aspects of the IDEA and its exhaustion requirements, which the Court found gave rise to claims demanding individualized proof, are not present here.

constituents. "[I]t is enough for the representative entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right." *Id.* at 885. Plaintiffs have satisfied this pleading standard.

## IV.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY ELEVENTH AMENDMENT OR SOVEREIGN IMMUNITY.

Plaintiffs sue Commissioners Tanner, Broce, and Carlson in their official capacity for prospective injunctive relief under the ADA,[6] Section 504, and the Medicaid Act.[7] They seek an injunction "that would compel Defendants to provide

---

[6] The Supreme Court already has determined that Congress unequivocally expressed its intent to abrogate the States' sovereign immunity with respect to claims under Title II of the ADA. *See* 42 U.S.C. § 12202; *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). It is also settled that "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." *Lane,* 541 U.S. at 518. Courts have recognized the abrogation of Eleventh Amendment immunity for claims under Title II of the ADA. *See e.g.*, *Lane*, 541 U.S. at 530-31; *United States v. Georgia*, 546 U.S. 151, 159 (2006); *Lonergan v. Fla. Dep't of Corr.,* 623 F. App'x 990, 993 (11th Cir. 2015); *Miller v. King*, 384 F.3d 1248, 1264 (11th Cir. 2004) (stating "we would join our sister circuits in holding that the Eleventh Amendment does not bar ADA suits under Title II for prospective injunctive relief against state officials in their official capacities"); *vacated on other grounds in Miller v. King*, 449 F.3d 1149, 1150 (11th Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606-07 (7th Cir. 2004); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414-15 (5th Cir. 2004); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188 (9th Cir. 2003); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003); *Carten v. Kent State Univ.*, 282 F.3d 391, 397 (6th Cir. 2002); *Randolph v. Rodgers*, 253 F.3d 342, 347-48 (8th Cir. 2001).

[7] Defendants improperly conflate the State's Eleventh Amendment immunity with statutory construction and private enforcement of the Medicaid Act. Medicaid enforcement is discussed in Section V.A., *infra*.

or arrange for the Remedial Services necessary to treat the children's mental health conditions and to administer their systems to avoid the institutionalization and segregation of Georgia's most vulnerable children," Compl. ¶ 3, and allege ongoing violation of the Medicaid Act, the ADA, and Section 504. *Id.* ¶ 1.[8] Thus, Plaintiffs' claims are not barred, as determined long ago in *Ex Parte Young*. 209 U.S. 123 (1908). *See, e.g., Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (holding Eleventh Amendment does not prevent federal courts from granting prospective relief to prevent a continuing violation of federal law) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir.1999) (holding *Ex Parte Young* recognized exception for suits against state officers seeking prospective equitable relief to end continuing violation of federal law).

Defendants present three arguments against a waiver of immunity, none of which has merit under prevailing law. First, Defendants argue that Plaintiffs are, in reality, seeking to compel the State to spend State funds and to dictate how State funds are spent such that the claims are actually against the State. Mem. 10. They are incorrect. Plaintiffs sue to stop ongoing violations of their *rights* under federal

---

[8] The State has waived its immunity from claims brought pursuant to the Rehabilitation Act by its acceptance of federal funds. Comp. ¶ 227 (alleging State accepts federal funds); *see* 29 U.S.C. § 794(b). Defendants do not challenge the State's waiver of immunity under Section 504.

laws and seek a prospective injunction requiring Commissioners Carlson, Tanner, and Broce, in their official capacities, to provide the Remedial Services—which the Eleventh Circuit has previously ruled is *not* barred by Eleventh Amendment immunity. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020); *accord Rosie D.*, 310 F.3d at 237.[9]

Second, Defendants erroneously claim Commissioners Carlson, Tanner, and Broce lack "enforcement" authority; from this they conclude, erroneously, that *Ex Parte Young* does not apply. Defendants' argument ignores *Luckey v. Harris*, which involved a complaint against Georgia's governor and certain state judges. 860 F.2d 1012, 1015 (11th Cir. 1998). Prospective relief could be ordered against the state officer there, including the governor, who is generally responsible for enforcing the state's laws. *Id*. at 1016. Defendant Carlson's agency, DCH, the Medicaid single state agency, has non-delegable responsibility to enforce the Georgia Medicaid program's compliance with the Medicaid Act, ADA, and Section 504. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; Ga. Code Ann. § 49-4-14. DBHDD is responsible for "ensuring the appropriate use of state, federal, and other funds to provide quality services for individuals with mental health, developmental disabilities, or addictive disease needs who are served by the public system and to protect consumers of these services from abuse and maltreatment." O.G.C.A. § 37-1-20(a)(11). DBHDD's

---

[9] Defendants' argument that this action is against the State fails to mention *Jacobson*.

enforcement ability here is further evidenced by its membership in the Georgia Collaborative ASO, which includes the Georgia Crisis and Access Line. Georgia Collaborative ASO (2024), https://www.georgiacollaborative.com. DHS's relevant responsibilities appear, *inter alia*, in O.G.C.A. §49-5-8(a)(9). Further, Plaintiffs allege sufficient facts to confirm that Defendants, in fact, have enforcement ability to ensure that Georgia's children receive the needed support. Compl. ¶¶ 71-79.

Third, Defendants cite a variety of inapposite cases to support an Eleventh Amendment immunity bar. A dispassionate reading of these cases reveals that they simply do not support the conclusion Defendants seek to draw from them. *Cf. Tamiami Partners, Ltd. ex rel. Tamiami Dev't. Corp. v. Miccosukee Tribe of Indians*, 177 F.3d 1212, 1226 (11th Cir. 1999) (regarding specific performance of a contract); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (recognizing that a suit challenging the constitutionality of a state official's action is not one against the State). Defendants also point to damages cases, which are inapposite. *McClendon v. Ga. Dep't. of Comm. Health*, 261 F.3d 1252 (11th Cir. 2001); *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981); *Fla. Ass'n of Rehab. Facilities, Inc. v. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1226 n.13 (11th Cir. 2000). Two other cited cases contradict Defendants' theory. *See Quern v. Jordan*, 440 U.S. 332, 333 (1979) (Eleventh Amendment immunity does

not bar prospective injunctive relief); *United States v. Georgia*, 546 US. 151, 159 (2006) (Congress validly abrogated immunity for Title II claims).[10]

## V. PLAINTIFFS' STATED MEDICAID ACT CLAIMS THAT ARE ENFORCEABLE AGAINST DEFENDANT CARLSON.

### A. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396a(a)(8) Are Enforceable Pursuant to 42 U.S.C. § 1983.

Plaintiffs seek to enforce specific Medicaid Act provisions. Defendants raise three arguments against enforcement: first, that state officials are not "persons" under § 1983; second, that rights in the Medicaid Act are not "secured" against the state; and third, the provisions do not meet the test for private enforcement. They also contend that, if these provisions are enforceable via § 1983, then Congress has engaged in illegal commandeering. The Court should reject each argument.

### 1. Plaintiffs' claims may proceed against Defendant Carlson.

Defendants maintain that state officials are not "persons" under § 1983. Mem. 29-30. They rely on *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In *Will*, the plaintiff claimed wrongful denial of employment by the state and sought damages. The Supreme Court rejected his claim, concluding that state "officials acting in their official capacities" are not "persons" under § 1983. *Id.* at 71. However, the *Will* Court then stated: "Of course a state official in his or her

---

[10] Defendants' claim that Plaintiffs did not adequately allege a violation of Title II is discussed in Section VI, *infra*.

official capacity, when sued for injunctive relief, *would* be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (emphasis added) (citations omitted). Here, Plaintiffs seek only prospective, injunctive relief. Compl. ¶¶ 16, 203, 238-39. Defendants' argument lacks merit.

### 2. Spending Clause enactments can create rights "secured" against the State.

Defendants next say that § 1983 does not apply because rights "secured by" Spending Clause enactments, such as Medicaid, are not secured against the states. Mem. 30. This argument ignores 40-year-old Supreme Court precedent, *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), holding that the "plain language" of § 1983 is not limited to "some subset of laws" and "undoubtedly embraces" Social Security Act claims. A supermajority of the Supreme Court recently reaffirmed *Thiboutot. See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 184 (2023) (holding that if a statutory provision satisfies the enforcement test (discussed below), "it 'secure[s]' § 1983-enforceable rights, consistent with § 1983's text") (alteration in original) (citation omitted)).

### 3. The Medicaid provisions create enforceable rights via § 1983.

The Medicaid Act provisions relied upon by Plaintiffs meet the Supreme Court's "demanding bar" for 1983-enforceable rights, including the requirement that

"the provision in question is phrased in terms of the persons benefitted and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class." *Talevski*, 599 U.S. at 180-83 (cleaned up) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 287 (2002)).

First, the reasonable promptness provision, 42 U.S.C. § 1396a(a)(8), requires the state to "provide that all individuals wishing to make application for medical assistance . . . shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." The Eleventh Circuit has held (a)(8) to be enforceable by Medicaid beneficiaries, reasoning, in part, that its "plain language" is focused on benefitting "'eligible individuals' . . . 'seeking Medicaid services.'" *Doe*, 136 F.3d at 715 (citation omitted). Defendants argue *Chiles* is not binding because it relied on pre-*Gonzaga* decisions and "[a]s a result, it applied a test that *Gonzaga* rejected." Mem. 35-36. However, the *Gonzaga* Court was not rejecting the holdings of its earlier cases, *per se*, but rather some courts' incorrect application of the enforcement test set forth in those cases. *Gonzaga*, 536 U.S. at 283 (addressing the "confusion" by "reject[ing] the notion that our cases permit anything short of an unambiguously conferred right"); *see Planned P'hood of S. Atl. v. Kerr*, 95 F.4th 152, 161-63 (4th Cir. 2024) (noting *Gonzaga* "repudiated an inaccurate but persistent understanding" of the enforcement cases). *Chiles* clearly applied the correct text to conclude that (a)(8) is enforceable by

21

pointing to the statute's creation of an individual right to receive services promptly, not a more generalized benefit; thus, it remains binding precedent. 136 F.3d at 715. And, since *Gonzaga*, other federal circuit courts have agreed with the Eleventh. *See Waskul v. Washtenaw Co. Cmty. Mental Health*, 979 F.3d 426, 448 (6th Cir. 2020); *Romano v. Greenstein*, 721 F.3d 373, 379 (5th Cir. 2013) (finding (a)(8) "unmistakably focused on the individual"); *Doe v. Kidd*, 419 F. App'x 411, 415-16 (4th Cir. 2011), *reaff'g*, 501 F.3d 348, 356-57 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 189-92 (3d Cir. 2004)*; see also Burban v. City of Neptune Beach*, 920 F.3d 1274, 1278 (11th Cir. 2019) (relying, in part, on *Chiles* when deciding enforcement question).[11]

Second, the EPSDT provisions, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(B)-(C), 1396d(a)(4)(B), 1396d(r)(5), are § 1983-enforceable because they require states to make necessary services available to all Medicaid-eligible

---

[11] Defendants also say *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), overrules *Chiles*. Mem. 36. That cannot be correct. "*Armstrong* isn't a § 1983 case." *Planned P'hood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018); *see also*, *e.g.*, *H.E. ex rel. William v. Horton*, No. 1:15-cv-3792-WSD, 2016 WL 6582682, at *5-6 (N.D. Ga. Nov. 7, 2016) ("*Armstrong* is also inapposite here, because it addresses a different statutory provision, asserted by different plaintiffs, under a different theory" (citation omitted)). Defendants briefly argue that the word "reasonable" is too vague for a court to enforce. Mem. 33. However, as noted, courts have not found this to be the case. *See e.g.*, *Chiles*, 136 F.3d at 717 (language of (a)(8) presents a "sufficiently specific and definite standard readily susceptible to judicial assessment"); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 430-32 (1987) (federal housing provision requiring "reasonable" allowance for utilities created an enforceable right).

individuals under age 21, including providing or arranging for the provision of screening and treatment services. On at least three occasions, this district court has applied *Gonzaga* and concluded that Medicaid beneficiaries can enforce these provisions. *See Horton*, 2016 WL 6582682, at *5 (noting "numerous courts have held[] the EPSDT Requirement is . . . unmistakably focused on the rights of Medicaid-eligible youth to receive the enumerated services") (citation omitted); *Hunter ex rel. Lynah v. Medows*, No. 1:08-cv-2930-TWT, 2009 WL 5062451, at *2 (N.D. Ga. Dec. 16, 2009) (holding the "EPSDT provisions are intended to benefit Hunter, who is eligible for the screening and treatment services described in the statute"); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 292-94 (N.D. Ga. 2003) (holding eligible children under 21 are "clearly intended beneficiaries of the [EPSDT] provisions"). Indeed, every federal circuit court applying *Gonzaga* to the EPSDT provisions has concluded that Medicaid beneficiaries have the right to enforce them. *See Waskul*, 979 F.3d 426 (concerning § 1396a(a)(10)(A)*; Bontrager v. Ind. Fam. & Soc. Servs. Admin*., 697 F.3d 604 (7th Cir. 2012) (same); *John B. v. Goetz*, 626 F.3d 356 (6th Cir. 2010); *Watson v. Weeks*, 436 F.3d 1152, 1159 (9th Cir. 2006) (concerning § 1396a(a)(10)(A)), *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 585 (5th Cir. 2004) (concerning §§ 1396a(a)(10)(A),1396a(a)(43)(B)); *Sabree*, 367 F.3d at 190 (concerning § 1396a(a)(10)(A)); *Ped. Specialty Care, Inc. v. Ark.*

*Dep't. of Hum. Servs.*, 293 F.3d 472 (8th Cir. 2002) (concerning §§ 1396a(a)(10)(A),1396a(a)(43)).

The reasonable promptness and EPSDT provisions meet the enforcement test and, thus, are presumptively enforceable. A defendant can defeat the presumption by "'demonstrating that Congress did not intend' that § 1983 be available to enforce those rights." *Talevski*, 599 U.S. at 186 (citation omitted). But Defendants here make no attempt to rebut that presumption, and understandably so. "[T]he [Medicaid] statute lacks any indicia of congressional intent to preclude § 1983 enforcement[.]" *Id.* at 188.

Defendants do not focus on the provisions that Plaintiffs seek to enforce. *But see Burban*, 920 F.3d at 1278-79 ("It is a mistake for a court to take a 'blanket approach' to determining whether a statute is rights-creating." (citation omitted)). Defendants argue instead that Medicaid Act provisions are too many steps removed from the interests of Medicaid beneficiaries because they are in a part of the Act (§ 1396a(a)) that concerns the requirements for the contents of the state's Medicaid plan and the federal Secretary's approval of those plans. Mem. 32-33. *Talevski* forecloses this argument: When a provision "establish[es] who it is that must respect and honor" statutory rights "that is not a material diversion from the necessary focus" on Medicaid beneficiaries. 599 U.S. at 185 (citing 42 U.S.C. § 1396a(a)(28) and provisions of § 1396r(c)). "Indeed, it would be strange to hold that a statutory

24

provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights[.]" *Id.* Moreover, in 1994, Congress enacted 42 U.S.C. § 1320a-2, expressly recognizing that provisions of the Social Security Act are not unenforceable because they are included in a section of the Act that concerns the requirements for the contents of a state's plan.

Finally, Defendants claim that the substantial compliance provision, 42 U.S.C. § 1396c, leaves the Medicaid Act with an aggregate focus that precludes § 1983 enforcement. Mem. 33-5. But *Talevski* held the challenged Medicaid Act provisions are 1983-enforceable, so "this cannot be right." *Kerr*, 95 F.4th at 168.[12]

### 4.   Requiring compliance with the Medicaid provisions is not commandeering.

Defendants argue that, if they are forced to comply with the Medicaid reasonable promptness and EPSDT provisions, then the "anti-commandeering doctrine" is violated. Mem. 29. This also cannot be right.

*National Federation of Independent Business v. Sebelius* (*NFIB*), 567 U.S. 519 (2012), examined when a federal Medicaid enactment can be commandeering (in Chief Justice Robert's words, "undue influence" or "compulsion"). *Id*. at 577-78 (citation omitted). The Court concluded that a provision in the Affordable Care Act requiring states to expand Medicaid to low-income childless adults was coercive.

---

[12] Defendants' reliance on the reasoning in *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017), is also foreclosed by *Talevski*.

25

The holding rested on the Court's finding that, with the ACA Medicaid expansion, Congress created a "new program," and when it conditioned states' existing federal Medicaid funding on adoption of that program, states were compelled to acquiesce. *Id*. at 581-82.

Of importance, *NFIB* acknowledged that "Congress may attach appropriate conditions to federal . . . spending programs to preserve its control over the use of federal funds." *Id*. at 580. And while "Congress' power to legislate under the spending power is broad," it does not include surprising States with post-acceptance conditions, *id*. at 584 (citation omitted), or imposing conditions that are not clear, *id*. at 583 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

There are no surprises for the State here. The original Medicaid Act required states to provide medical assistance to designated population groups, among them children. *NFIB*, 567 U.S. at 583 (citing § 1396a(a)(10)). The original Medicaid Act included the reasonable promptness provision. Social Security Act of 1965, Pub. L. No. 89-97, § 121, 79 Stat. 343-44 (1965) (enacting 42 U.S.C. § 1396a(a)(8)). *See Pennhurst*, 451 U.S. at 17-8 (giving identically worded reasonable promptness provision from another Social Security Act program as an example of Congress knowing how to impose a condition on states). Another original Medicaid provision expressly reserved "[t]he right to alter, amend, or repeal any provision" of that statute. 42 U.S.C. § 1304. Congress has, in fact, "altered and expanded the

boundaries" of the Medicaid Act over the years, "sometimes conditioning only the new funding, other times both old and new." *Id*. at 583. Congress added the EPSDT provisions in 1967. *See* Social Security Act Amendments of 1967, Pub. L. No. 90-248, § 302(a), 81 Stat. 929 (1967).

Moreover, from the outset of the Medicaid Act, both Congress and the states have understood that federal statutes can be enforced pursuant to § 1983. *See Talevski*, 599 U.S. 180 n.8 (noting that the text of § 1983 supplies the necessary notice that a state can be sued). *See also*, *e.g*., *King v. Smith*, 392 U.S. 309, 317 (1968) (allowing recipients to enforce the reasonable promptness provision of the Social Security Act's welfare law pursuant to § 1983); *Thiboutot, 448 U.S. at 30* ("[S]uits in federal court under Section 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating states.") (citing *Rosado v. Wyman*, 397 U.S. 397, 422-23 (1970))). Georgia began participating in Medicaid with full knowledge of the Medicaid Act's provisions and that individuals could enforce provisions of the Act through § 1983. Georgia cannot claim that it is being coerced or commandeered if it is required to comply with the reasonable promptness and EPSDT provisions.[13]

---

[13] Defendants' commandeering argument is tied to § 1983 enforcement of the Medicaid Act provisions. Mem. 29. The ADA and Section 504 expressly authorize judicial relief for the types of violations described in Plaintiffs' Complaint, and Plaintiffs are not seeking to enforce those statutes through § 1983.

27

**B.      Plaintiffs State Claims Under 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396a(a)(8) Against Defendant Carlson.**

Defendants urge dismissal of Plaintiffs' Medicaid claims because they purportedly fail to allege the requisite medical necessity, that they requested screening, and precisely requested the Remedial Services. However, as discussed below, Plaintiffs sufficiently allege that the Remedial Services are necessary to "correct or ameliorate" their mental health conditions (*i.e.*, that they are medically necessary) to state claims under §§ 1396a(a)(10) and (a)(43)(C), and that this medical assistance must be provided with "reasonable promptness" to state claims under (a)(8). Plaintiffs need not also allege screening requests or precise service requests to state claims under § 1396a(a)(43)(c) and (a)(8).

**1.      Plaintiffs established their need for the Remedial Services.**

Defendants argue that the Complaint "contains no allegations that would make [the] medical conclusion" that the "Remedial Services are necessary to treat the Children's ongoing conditions" plausible, Mem. 38, and that a recommendation of the Remedial Services by a physician or licensed clinician is required to establish their medical necessity. Mem. 38-39. Both contentions are wrong.

First, Defendants ignore the facts pleaded in the Complaint. Each Plaintiff has been diagnosed with mental health conditions and meets the criteria for SED. Compl. ¶¶ 5, 24-5, 36-7, 47, 57. Each Plaintiff alleges that the Remedial Services are

28

currently "necessary to treat their [diagnosed] mental health conditions." *Id.* ¶¶ 24-5, 27, 29, 32-3, 36-7, 39, 41-43 47, 50, 52-4, 57, 59, 61, 63-4. Plaintiffs also allege that the Remedial Services are "necessary . . . to correct or ameliorate" these conditions. *Id.* ¶ 210.

Plaintiffs further allege that the Remedial Services are necessary to treat their mental health conditions because the services they did receive, including the specialty services (IC3, IFI, and mobile crisis)[14] and those in secure Psychiatric Institutions, do not meet their needs. *Id.* ¶¶ 2, 5, 8, 26-31, 38-43, 49-53, 59-63, 145, 186.[15] Plaintiffs' allegations include that (i) their respective treating clinicians repeatedly determined that treatment of their conditions did not require institutional care, *id.* ¶¶ 27, 30, 39-41, 49, 52-3, 61, 63, (ii) clinicians recommended intensive home and community-based services for them, including, intensive in-home services, *id.* ¶¶ 27, 28, 30, 39-41, 50, 52, 62, and (iii) that these services were not

---

[14] Intensive Customized Care Coordination ("IC3"), Intensive Family Intervention ("IFI"), and mobile crisis ("GCAL") are specialty services currently covered by Georgia's Medicaid program. Compl. ¶¶ 145-81. "[T]hese services fall short of the Remedial Services [the Children seek,] and, in any event, Defendants have failed to provide them to all of the Children who need them." *Id.* ¶ 145. While IC3 has several features that are similar to ICC, Defendant's failure to make reasonable modifications of its eligibility criteria, accessibility, treatment components, and method of delivery means that only a small fraction of the Children who need it receive IC3. *Id.* ¶¶ 152-60. IFI also falls short of the Intensive In-Home Services the Children seek, because of similar access restrictions and service capacity limitations. *Id.* 163-68. Finally, GCAL and Georgia's current mobile crisis response services fall short of the Mobile Crisis Response services sought here. *Id.* ¶¶ 173-81.

[15] "Psychiatric Institutions" provide mental health services. Compl. ¶ 8, 8 n.3-6.

provided. *Id.* ¶¶ 28, 30, 41-3, 50, 52, 60, 62-63. In short, despite numerous and repeated experiences of institutionalization, treatment professionals have consistently recommended that Plaintiffs be discharged to the community with the provision of community-based services. *Id.* Deficiencies in existing services resulted in their repeated and ongoing institutionalization. *Id.* ¶¶ 30, 31, 43. As such, Plaintiffs allege that the Remedial Services are "medically necessary" for them and other children with SED who have experienced deteriorating mental health conditions and repeated Psychiatric Institutionalizations. *Id.* ¶¶ 2, 13, 197, 210, 216.

Defendants nonetheless argue that the "*only* factual support alleged is that each child has various mental illnesses that necessitate treatment." Mem. 38 (emphasis added). They ignore, as detailed above, Plaintiffs' treatment histories, their treating and discharging clinicians' recommendations of intensive community-based services for them, the insufficiency of basic outpatient services for Plaintiffs resulting in repeated institutionalizations, and institution-based clinicians' determinations that institutional care is not necessary for Plaintiffs. Defendants also ignore the harms Plaintiffs suffer in the absence of specific treatment—that the Remedial Services should provide. Compl. ¶¶ 2, 5, 8, 26, 30, 38, 41, 51, 59, 61, 63. These allegations are not "merely consistent with" "the Remedial Services being

necessary treatment" for Plaintiffs. *Cf.* Mem. 38.[16] They must be read in tandem with Georgia officials' recognition that children with SED have unmet mental health needs, Compl. ¶¶ 135-44, 189, and federal agencies' recommendation of the Remedial Services to meet those needs. *Id.* ¶¶ 1, 145-46, 162-63, 170-71, 174; *cf. Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (allegations may not be parsed in isolation).

Despite these allegations, Defendants assert that Plaintiffs' failure to allege that a physician recommended the Remedial Services "shows" that they did not receive the services because no physician recommended them. Mem. 38-9. Again, they are wrong. As described above, Plaintiffs allege that clinicians recommended intensive home and community-based services for them, but they did not receive the services. The unavailability of these services in this form in Georgia explains why clinical recommendations for the Remedial Services might not be specific or detailed. Compl. ¶¶ 7, 145, 149-52, 163-66, 175-81; *Rosie D.*, 410 F. Supp. 2d at 45 ("It is well understood by anyone familiar with provision of Medicaid services . . . that clinicians hesitate to prescribe treatments and services for Medicaid patients that are not specifically listed in billing codes."); *see Braden*, 588 F.3d at 594. Finally,

---

[16] Defendants' "consistency" argument cuts both ways. "'Just as a plaintiff cannot proceed if his allegations are "merely consistent with" a defendant's liability' . . . so a defendant is not entitled to dismissal if the facts are merely consistent with lawful conduct." *Covington v. Gifted Nurses, LLC*, No. 1:22-cv-4000-VMC, 2023 WL 5167366, at *8 (N.D. Ga. July 19, 2023) (quoting *Braden*, 588 F.3d at 596).

even precise physician's recommendations are not dispositive of medical necessity. Plaintiffs' detailed allegations that the Remedial Services are necessary to correct or ameliorate their mental health conditions are sufficient to avoid dismissal. The Court should decline Defendants' invitation to "go beyond the pleadings and incorrectly address the merits of Plaintiffs' allegations at [this] stage." *Vote.org v. Ga. State Election Bd.*, 661 F. Supp. 3d 1329, 1340 (N.D. Ga. 2023).

Finally, Defendants' invocation of *Moore* is inappropriate in this context. Mem. 38-39. *Moore* examined whether or not a service is medically necessary for an individual child. *See id.*, 637 F. 3d 1220. Here, the Court will never be called upon to make individual medical necessity decisions, and thus apply the reasoning of *Moore*. Rather, this case will require the Court to determine whether systemic barriers under Defendants' control are causing Remedial Services to be unavailable and resulting in ongoing and unnecessary institutionalization. To establish a claim, the Plaintiffs need to allege facts showing that they are Medicaid beneficiaries who have been found to need the Remedial Services, and this they have done.

## 2. Courts have repeatedly rejected a "screen request" requirement to state a § 1396a(a)(43)(C) claim.

There is no merit to Defendants' argument that Plaintiffs' claims for needed treatment must be dismissed because they did not, first, formally request an EPSDT screen. The Medicaid Act requires states to cover two types of screens: pre-set,

periodic screens (well-child check-ups) and screens at other intervals as needed to determine whether the child has a condition that needs attention (interperiodic screens). *See* 42 U.S.C. §§ 1396a(a)(43)(B)-(C), 1396d(r)(1)-(4). The latter constitute "screens" that trigger the State's obligation to ensure that necessary services are provided. As CMS has counseled,

> any visit or contact with a qualified medical professional is sufficient to satisfy EPSDT's screening requirement, and states should consider a beneficiary who is receiving services to be participating in EPSDT, whether the beneficiary requested screening services directly from the state or the health care provider.

*See* Centers for Medicare & Medicaid Services, EPSDT-A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents at 6-8 (June 2014), *A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents (hhs.gov)*. CMS also has noted, "[t]he family or beneficiary need not formally request an EPSDT screening in order to receive the benefits of EPSDT." *Id.* at 6.

In addition, courts have rejected the notion that state officials can meet the legal mandate of EPSDT by waiting for children and families to contact the program and request a screen. In *Stanton v. Bond*, 504 F.2d 1246 (7th Cir. 1974), the Court stated:

> It is utterly beyond belief to expect that children of needy parents will volunteer themselves or that their parents will voluntarily deliver them to the providers of health services for early medical screening and diagnosis. By the time an Indiana child is brought for treatment it may too often be on a

stretcher. This is hardly the goal of "early and periodic screening and diagnosis.

*Id.* at 1251; *see also C.A. v. Garcia*, 673 F. Supp. 3d at 978 (rejecting screening request requirement for §1396a(a)(43) claim).[17]

Consistent with CMS administrative guidance and applicable case law, Plaintiffs' allegations are sufficient to trigger the State's obligation to arrange for them to receive the needed treatment services. Plaintiffs' parents requested interperiodic screens that revealed the mental health conditions that Plaintiffs need the Remedial Services to treat. Compl. ¶¶ 26-31, 38-43, 49-53, 59-63. They also requested more intensive services to treat Plaintiffs' conditions. *Id*. ¶¶ 29, 39, 50, 52, 63. Thus, Plaintiffs' § 1396a(a)(43) claim is adequately pleaded and should not be dismissed.

### 3.   Defendants' challenge to Plaintiffs' § 1396a(a)(10) claim merely repeats their previous arguments.

Defendants' challenge to Plaintiffs' § 1396a(a)(10) claim merely repeats their previous medical necessity and screening request arguments. Mem. 41. These

---

[17] Defendants cite *Troupe v. Barbour*, No. 3:10-CV-153, 2013 WL 12303126, at *4 (S.D. Miss. Aug. 23, 2013), in urging this Court to impose a formal screening request requirement. But the *Troupe* court's decision requiring a screen request did not explain its finding that the magistrate's reasoning "was more persuasive" than *Stanton* and *Rosie D*. No other court has followed these decisions; this Court should likewise reject such a crabbed interpretation of the law.

arguments fail here for the identical reasons set forth in Sections V.B.1 and 2, *supra*. Thus, the Court should decline to dismiss Plaintiffs' § 1396a(a)(10) claim.

### 4. Defendants' challenges to Plaintiffs' § 1396a(a)(8) claims lack merit.

Defendants' first challenge to Plaintiffs' § 1396a(a)(8) claims repeats their previous medical necessity and screening request arguments. Mem. 42. They fail here as well for the reasons set forth in Sections V.B.1 and 2, *supra*.

Defendants' objection that Plaintiffs "do not allege that any had requested the *Remedial Services* rather than existing ones," Mem. 42-43, is baseless. Defendants acknowledge that Zack B.'s and Samuel D.'s parents requested "more intensive services." Compl. ¶¶ 39, 63. So too did Leon C's mother. *Id*. ¶¶ 50-52. They also acknowledge that each child's parents requested intensive home and community-based services when Plaintiffs' discharge plans were developed. *Id*. ¶¶ 28, 39, 50-52, 63. Defendants cite no authority requiring the parents of Medicaid-eligible children to precisely specify services in a form not currently available to state a claim for violation of §1396a(a)(8). The Court should likewise decline to do so here.

## VI. PLAINTIFFS STATE ADA AND SECTION 504 CLAIMS AGAINST DEFENDANTS CARLSON, TANNER, AND BROCE.

Defendants set out five theories in support of their argument that Plaintiffs fail to state a claim under Title II of the ADA, 42 U.S.C. §§ 12131–12134, and Section 504, 29 U.S.C. § 794.1. Each theory fails because it: 1) misconstrues the applicable

legal standard for stating a claim; 2) is inconsistent with prevailing case law; and

3) incorrectly frames Plaintiffs' factual allegations and requests for relief.

> **A.** **Plaintiffs' Claims for Reasonable Modification of the Existing Service System Are Sufficient to State a Claim Under the ADA and Section 504.**

Defendants concede that public entities have an affirmative obligation under

both the ADA and Section 504 to administer their services, programs, and activities

in "the most integrated setting appropriate to the needs" of individuals with

disabilities. 28 C.F.R. §§ 35.130(d), 41.51(d). As such, they must make reasonable

modifications in policies, practices, or procedures when necessary to avoid

discrimination on the basis of disability, unless they can demonstrate that those

modifications would fundamentally alter the nature of the service, program or

activity. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i). Plaintiffs' prima facie

burden of identifying a reasonable modification is not a "heavy one." *Florida*, 2023

WL 4546188, at *51 (quoting *Henrietta D.*, 331 F.3d at 280).

The reasonable modification of existing service systems—including the

enhancement, expansion, and alteration of those systems—does not in and of itself

constitute a "new" benefit. Mem. 47. Nor does relocation of intensive services from

institutional to community settings. Contrary arguments have been understandably

rejected by multiple courts. *See, e.g., Townsend v. Quasim*, 328 F.3d 511, 517 (9th

Cir. 2003) ("If services were determined to constitute distinct programs based solely

on the location in which they were provided, *Olmstead* and the integration regulation would be effectively gutted."); *N.B.,* 2013 WL 6354152, at *8 ("[P]laintiffs' desire for appropriate treatment in a non-hospital setting is not inherently a request for a new program; rather, it speaks to how and where services are available.").

Defendants' Memorandum acknowledges that Plaintiffs are not seeking entirely new mental health programs and services. Mem. 5-7. Defendants purport to deliver three "specialty" services, IC3, IFI, and mobile crisis, Mem. 5-6, albeit with restrictions and deficiencies that undermine their effectiveness and render them unavailable for most children. Therefore, these aspects of the proposed remedy are plainly not "new." Instead, Plaintiffs allege that existing services are neither readily available nor adequate, absent reasonable modifications. Moreover, they are facially inconsistent with federal government standards and Defendants' own service descriptions, thus depriving Plaintiffs of timely access to medically necessary treatment in the community.[18] Compl. ¶¶ 145, 149-60, 163-69, 175-81. Plaintiffs allege that currently available services, including IFI, employ restrictive eligibility criteria that exclude a cohort of eligible youth with co-occurring conditions, and do

---

[18] Defendants misplace reliance on *Rodriguez v. City of New York,* 197 F.3d 611 (2d Cir. 1999), *cert. denied,* 531 U.S. 864 (2000). *Rodriguez* involved adult Medicaid recipients seeking an optional State plan service that New York had not elected to provide—in any comparable form—to anyone in its Medicaid program. Here, Plaintiffs seek mandatory services which States are obligated to provide under Medicaid's EPSDT provisions, are Medicaid-covered, and which Defendants claim to deliver—in some form—as part of their existing mental health system.

not include specific clinical interventions that are medically necessary for children with SED. *Id*. ¶¶ 145, 163-69.

Moreover, Defendants' argument that Plaintiffs seek a "prohibited" standard of care or legal benefit is misguided for three reasons. Mem. 44. First, Plaintiffs seek a reasonable modification of the existing mental health system including access to three Medicaid-reimbursable Remedial Services which, when provided together and in a coordinated way, are proven to reduce reliance on segregated, institutional care. Compl. ¶¶ 1, 2, 146-48,161-62, 171-74. Second, the State's obligations under Medicaid's EPSDT mandate are what determines the applicable standard of care and scope of benefit. *Id*. ¶¶ 1, 188. The Remedial Services are both Medicaid-covered and recommended by the federal government, making their provision a reasonable and readily achievable modification to Georgia's mental health system. *Id*. And finally, as discussed below, Plaintiffs more than adequately plead their need for, and entitlement to, these services, and the reasonableness of requested modifications to Defendants' mental health system, allowing them to survive a motion to dismiss. *See* Section V.B.1, *supra*; Compl. ¶¶ 188, 225, 233.

### B. Plaintiffs' Allegations State an *Olmstead* Claim, Including the Extent to Which They Are Qualified For, Need, and Would Prefer to Receive Services in the Community.

The first prong of the *Olmstead* analysis requires that an integrated setting be "appropriate to the needs of qualified individuals." 28 C.F.R. § 35.130(d); *Olmstead*,

527 U.S. at 602. This requirement derives in part from statutory text limiting Title II's protections to "qualified individual[s]" — persons who, "with or without reasonable modifications," "meet[] the essential eligibility requirements" for "services." 527 U.S. at 601-02 (first alteration in original) (quoting 42 U.S.C. § 12131(2), 12132). All of the Individual Plaintiffs are "qualified" individuals because they are enrolled in Georgia's Medicaid program, have diagnosed mental health conditions and meet the criteria for SED, and are receiving or have been recommended to receive community-based mental health services. Compl. ¶¶ 22, 25, 27-8, 34, 37-8, 40, 45, 47, 49-50, 55, 57, 61-2.

Numerous courts, including the Eleventh Circuit, have concluded that the most integrated setting analysis calls for an inquiry into the appropriateness of a *type* of placement, not a particular service or location. *See L.C. ex rel. Zimring v. Olmstead*, 138 F.3d 893, 903 (11th Cir. 1998), *aff'd in relevant part, vacated in part on other grounds*, 527 U.S. 581; *Steimel*, 823 F.3d at 915-16; *Frederick L.* v. *Dep't of Pub. Welfare*, 364 F.3d 487, 493 (3d Cir. 2004). Non-institutional settings are appropriate if qualified individuals could live in the community with access to the services for which they are eligible, and which the State is legally required to provide. *See, e.g., United States v. Florida.,* 2023 WL 4546188, at *37; *Radaszewski*, 383 F.3d at 612-13.

Contrary to Defendants' assertion, both the Supreme Court in *Olmstead*, and

courts applying its decision, have concluded that evidence of appropriateness for community services is *not* limited to the judgment of the public entities' treatment professionals. *Olmstead*, 527 U.S. at 602 (citing 28 C.F.R. § 35.130(d)); *see United States v. Georgia*, 461 F. Supp. 3d 1315, 1323 (N.D. Ga. 2020) ("Although the Supreme Court in *Olmstead* noted that a State 'generally may rely on the reasonable assessments of its own professionals,' it did not hold that such a determination was required to state a claim.") (citation omitted); *M.J.*, 401 F. Supp. 3d at 12-13 (holding plaintiff need not allege that State's treatment professionals have determined her to be suitable for community-based treatment; appropriateness was adequately pled by alleging that she would be able to live in the community with services); *Long v. Benson*, No. 4:08cv26, 2008 WL 4571904, at *2 (N.D. Fla. Oct. 14, 2008) (refusing to limit class to individuals whom state professionals deemed could be treated in the community, because a State "cannot deny the [integration] right simply by refusing to acknowledge that the individual could receive appropriate care in the community. Otherwise, the right would, or at least could, become wholly illusory.").

The Department of Justice reached a similar conclusion in its June 2011 Statement on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.* ("DOJ Statement"):

> An individual may rely on a variety of forms of evidence to establish that an integrated setting is appropriate. A reasonable, objective assessment by a public entity's treating professional is one, but only one, such avenue.

40

*Id*.[19] Plaintiffs need not allege that a treatment provider recommended a particular community-based treatment to survive a motion to dismiss. *See, e.g., Steimel*, 823 F.3d at 915-16; *M.J.,* 401 F. Supp. 3d at 13; *Boyd v. Steckel*, 753 F. Supp. 1163, 1174 (M.D. Ala. 2010).

Plaintiffs adequately plead their appropriateness for integrated community services, including for Isaac A. and Zach B. Compl. ¶¶ 27, 28, 39, 42. Despite numerous and repeated experiences of institutionalization, treatment professionals have consistently recommended that both be discharged to the community with the provision of community-based services. *Id*. Deficiencies in existing services resulted in their repeated and ongoing institutionalization. *Id*. ¶¶ 30, 31, 43. Both pleaded that with access to necessary Remedial Services, their conditions could be appropriately treated in their homes and communities. *Id*. ¶¶ 32, 33, 40, 44. Thus, Isaac A. and Zach B. have satisfied this element of an *Olmstead* claim.

Defendants are similarly mistaken when arguing that Leon C. fails to state an *Olmstead* claim because he has refused community treatment. When determining non-opposition:

> [t]he relevant question is whether service recipients with disabilities would choose community-based services if they were actually available and

---

[19] *See* https://archive.ada.gov/olmstead/q&a_olmstead.htm. This statement is authoritative and worthy of respect. *See, e.g*., *Olmstead*, 527 U.S. at 597–98 ("Because the Department is the agency directed by Congress to issue regulations implementing Title II, see *supra,* at 2182-2183, its views warrant respect.").

accessible—not whether persons with disabilities (or, in this case, their parents or guardians) would accept discharge to the community today, with inadequate access to community-based services. If the latter were the case, it would defeat the purpose of the integration mandate.

*Florida*, 2023 WL 4546188, at *47 (internal citations omitted); *see also Kenneth R. ex rel. Tri-Cnty. CAP, Inc. v. Hassan*, 293 F.R.D. 254, 270 n.6 (D.N.H. 2013).

Likewise, individuals who express an interest in integrated community living are not opposed under *Olmstead,* since meaningful opposition requires an informed choice to waive one's right to an integrated setting. *See Disability Advocs., Inc. v. Paterson*, 653 F. Supp. 2d 184, 263 (E.D.N.Y. 2009) (crediting witnesses who opined that people currently reporting "a preference to move out of their adult home is merely 'a floor' with regard to who would truly be willing to move if given" information and support in making a "true choice" (citation omitted)), *vacated on other grounds sub nom Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 162-63 (2d Cir. 2012).

Plaintiffs adequately plead that with timely access to, and coordination of, necessary Remedial Services they are not opposed to community living. Compl. ¶¶ 32, 43, 53, 63. In fact, they have been seeking, and would strongly prefer to receive, intensive mental health services in the community. *Id.* Leon C.'s allegations make clear that his mother continued to insist on receipt of services in his home and community and that her reluctance to accept proposed conditions of discharge was

based on lack of access to the Remedial Services necessary to avoid a pattern of re-institutionalization. *Id.* ¶ 53.

Defendants wrongly assert that *Olmstead* claims arise only in traditional inpatient facilities and only when location of services is the issue. Mem. 47. This argument runs contrary to a well-established and growing body of case law applying the integration mandate to discriminatory segregation in nursing facilities, segregated workshops, residential programs, and community homes.[20] It is clear that, "nothing in the ADA or regulations require that the services being sought in an integrated community setting 'already exist in exactly the same form in the institutional setting.'" *N.B.*, 2013 WL 6354152, at *8 (citation omitted). "If differences in service delivery were enough to defeat a claim seeking community-based care, 'then the integration mandate of the ADA and the Rehabilitation Act would mean very little.'" *Id.* (quoting *Radaszewski,* 383 F.3d at 611).

---

[20] *Van Meter v. Harvey*, 272 F.R.D. 274 (D. Me. 2011) (certifying class of adult Medicaid recipients in and at risk of admission to nursing facilities and asserting violations of Title II of the ADA and Section 504); *Lane v. Kitzhaber,* 841 F. Supp. 2d 1199 (D. Or. 2012) (denying motion to dismiss claim involving segregated workshops); *Lane v. Kitzhaber,* 283 F.R.D. 587 (D. Or. 2012) (certifying class); *M.J.,* 401 F. Supp. 3d at 11 (finding plaintiffs' allegations of unnecessary segregation in residential institutions sufficient to state claims under *Olmstead)*; *Steimel,* 823 F.3d at 910-14 (finding plaintiffs in provider-operated community residences may experience discriminatory segregation when State policies isolate them in their own homes); *Waskul*, 979 F.3d at 460-61 (recognizing segregation in community homes).

Finally, as explained below, Samuel D. adequately pleads his serious and continuing risk of segregation. This risk is not hypothetical. He has experienced repeated admissions to psychiatric settings due to a continuing lack of necessary Remedial Services in the community. Compl. ¶ 61. Samuel D. also is experiencing a deterioration in his mental health condition, limiting his ability safely to participate in community life. *Id*. ¶ 63. As the Complaint makes clear, Samuel D. is isolated at home not by choice, but because of Defendants failure to provide timely and coordinated access to Remedial Services. *Id*.

### C.   Plaintiffs Have Stated a Cognizable At-Risk Claim.

Neither the text of Title II nor the integration mandate states that qualified individuals with disabilities must subject themselves to unnecessary institutionalization in order to trigger a public entity's affirmative obligation to administer services in the "most integrated setting appropriate." 28 C.F.R. 35.130(d); *see also Fisher v. Okla. Health Care Auth*., 335 F.3d 1175, 1181-82 (10th Cir. 2003) ("[W]hile it is true that the plaintiffs in *Olmstead* were institutionalized at the time they brought their claim, nothing in the *Olmstead* decision supports a conclusion that institutionalization is a prerequisite to enforcement of the ADA's integration requirements." (citation omitted)).

In fact, it is well-established that people with disabilities need not be institutionalized, or even on the verge of admission to an institution, in order to have

44

a viable claim under the ADA's integration mandate. This mandate "would be meaningless if [people with disabilities] were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." *Florida,* 2023 WL 4546188, at *6 (quoting *Fisher*, 335 F.3d at 1181); *Hunter ex rel. Lynah v. Cook*, No. 1:08-CV-2930-TWT, 2011 WL 4500009, *4-5 (N.D. Ga. Sept. 27, 2011) (quoting *Fisher*, 335 F.3d at 1181-84).

Six circuit courts of appeal similarly have concluded that individuals at serious risk of institutionalization have cognizable claims under Title II and the integration mandate. *See Waskul*, 979 F.3d at 460-61; *Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016); *Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013); *Steimel*, 823 F.3d at 914; *M.R. v. Dreyfus*, 697 F.3d 706, 734-35 (9th Cir. 2012); *Fisher*, 335 F.3d at 1181-82.[21] In its interpretation of the statute and implementing regulations, the DOJ concluded that a plaintiff could:

> show sufficient risk of institutionalization to make out an *Olmstead* violation if a public entity's failure to provide community services or its cut to such services will likely cause a decline in health, safety, or welfare that would lead to the individual's eventual placement in an institution.

---

[21] Numerous district courts have followed suit. *See, e.g.*, *Hunter*, 2011 WL 4500009, at *4-5; *Jonathan R. v. Just*., 344 F.R.D. 294, 313 (S.D. W. Va. 2023); *Steward v. Abbott*, 189 F.Supp.3d 620, 633 (W.D. Tex. 2016); *Kenneth R.*, 293 F.R.D. at 265; *Lane*, 283 F.R.D. at 602; *Oster v. Lightbourne*, No. C 09-4668 CW, 2012 WL 685808, at *5 (N.D. Cal. Mar. 2, 2012), *order corrected*, No. C 09-4668 CW, 2012 WL 1595102 (N.D. Cal. May 4, 2012); *Makin ex rel. Russel v. Hawaii*, 114 F. Supp. 2d 1017, 1033 (D. Haw. 1999).

DOJ Statement at 5.

Courts within the Eleventh Circuit likewise have found that plaintiffs may state an at-risk claim under the ADA. *See Meza ex rel. Hernandez v. Marstiller*, No. 3:22-cv-783-MMH-LLL, 2023 WL 2648180, at *5 (M.D. Fla. Mar. 27, 2023) (certifying class including medically fragile adults at serious risk of institutionalization, noting "disability discrimination claims arising out of *Olmstead* are not limited to individuals who are institutionalized at the time of the lawsuit" (citing *Davis*, 821 F.3d at 262-63)); *Florida,* 2023 WL 4546188, at *65 (post-trial judgment for children experiencing or at serious risk of unnecessary segregation resulting from failure to provide private duty nursing services); *Georgia*, 461 F. Supp. 3d at 1323-35 (denying motion to dismiss claims of children with disabilities segregated or at risk of segregation in separate and unequal educational programs).

Ignoring this body of local and national precedents, Defendants point to the one circuit court that has reached a contrary conclusion. Mem. 48. The Fifth Circuit's holding in *United States v. Mississippi*, 82 F.4th 387 (5th Cir. 2023), is an outlier nationally, and its analysis distinguishable from the present case in several important respects. 82 F.4th 387 (5th Cir. 2023). First, the Fifth Circuit acknowledged that its holding could be different, and thus consistent with other circuit decisions, if the community services sought were medically necessary, Medicaid-covered services,

46

as is the case here. *Id*. at 396. Second, Plaintiffs are not civilly committed by a court that is required to consider whether there is a less restrictive alternative to the commitment process. Third, the risk of institutionalization faced by Samuel D. is not hypothetical but highly likely to occur, as evidenced by his experience of ten hospitalizations in the past five years, the continuing deterioration of his mental health condition, and his unmet treatment needs in the community. Compl. ¶ 61, 63.

## D. Plaintiffs Properly State a Claim for Disability Discrimination.

This case is about children with various disabilities who are unnecessarily segregated or who are at serious risk of institutionalization in violation of federal law. Compl. ¶¶ 1-2, 7. Defendants fail to reasonably accommodate the needs of all Plaintiffs, particularly those with co-occurring disabilities, resulting in their unnecessary segregation and serious risk of segregation. *Id*. ¶¶ 13, 50, 142, 159-60, 167-68, 222-23. Defendants' service eligibility criteria, policies and procedures, and the limited availability of services subject all Plaintiffs, and particularly those with co-occurring disabilities, to discrimination in violation of federal law. *See* 28 C.F.R. §§ 35.130 (b), (d); Compl. ¶¶ 14, 106, 108, 221, 230. Although Defendants institutionalize children without regard to their specific disabilities, their administration of community services excludes those with co-occurring disabilities, leaving them in segregated institutional settings or at serious risk of institutionalization. Compl. ¶¶ 13, 50, 142, 159-60, 167-68, 222-23, 229.

The Supreme Court has held that "[u]njustified isolation … is properly regarded as discrimination based on disability." *Olmstead*, 527 U.S. at 597. The Court explicitly rejected arguments that the plaintiffs "encountered no discrimination 'by reason of' their disabilities because they were not denied community placement on account of those disabilities." *Id.* at 598. Several courts have held that because unnecessary segregation is "discrimination per se," plaintiffs need not show intentional discrimination, disparate treatment, or disparate impact to sustain an *Olmstead* claim. *See id.* at 594; *L.E. ex rel. Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.,* 55 F.4th 1296, 1303–04 (11th Cir. 2022); *Davis*, 821 F.3d at 260-61 ("*Olmstead* unquestionably holds that the 'unjustified institutional isolation of persons with disabilities' is, in and of itself, a prohibited form of discrimination.'" (citations omitted)); *Steimel*, 823 F.3d at 910.

## E.   The Requested Relief Is Not a Fundamental Alteration.

Fundamental alteration is an affirmative defense, not an element of Plaintiffs' burden at the pleading stage. Whether a proposed modification amounts to a fundamental alteration of Defendants' service system is a fact-intensive question that is inappropriate for resolution at the pleading stage, particularly in class action litigation. *See Olmstead*, 527 U.S. at 603-04; *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1330-31 (M.D. Fla.  2011) ("This defense, raised by Defendants in a motion to dismiss, cannot succeed given the allegations of the Complaint which the Court

must accept as true."); *M.J.*, 401 F. Supp. 3d at 13 (rejecting fundamental alteration challenge at pleading stage); *Martin v. Taft*, 222 F. Supp. 2d 940, 972 (S.D. Ohio 2002) (fundamental alteration question cannot be decided in motion to dismiss).

Plaintiffs adequately allege that Defendants are required by federal law to provide the Remedial Services, that their provision can be accomplished through a reasonable modification of the existing service system, and that such modification would not result in a fundamental alteration of the Defendants' mental health system. Compl. ¶¶ 1, 2, 107, 188, 193, 223, 225. Nor would Plaintiffs' proposed relief (timely access to three defined Remedial Services) compromise the essential nature of the services or require "sweeping relief" as Defendants allege. Mem. 50.

Finally, Defendant's reliance on *Shavelson v. Bonta*, 608 F. Supp. 3d 919 (N.D. Cal. 2022), is misplaced. *Bonta* is not an integration mandate case. And, there, plaintiff's requested relief would have facially changed California's aid in dying law to allow physicians to administer, rather than simply prescribe, medication—an action which had been explicitly prohibited and subject to criminal penalty.

## VII.   PLAINTIFFS' COMPLAINT SATISFIES RULE 8.

Finally, the Complaint is not a "shotgun pleading." Mem. 8-10. Construed most favorably to Plaintiffs, as the law requires, it allows Defendants to determine the factual allegations intended to support each claim for relief. *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019). It also provides Defendants

adequate notice of Plaintiffs' claims and the grounds for each, as evidenced by Defendants' Memorandum. *See id.*; *M.H. v. Reese*, No. 1:15-CV-1427-TWT, 2015 WL 7283174, at *4 (N.D. Ga. Nov. 16, 2015) (denying motion to dismiss pleading that "did not materially increase burden of understanding the factual allegations underlying each count" despite "common mistake of incorporating each preceding count into the next"). Rule 8 neither permits nor requires dismissal here.

## VIII. CONCLUSION

As set forth herein, Defendants' Motion should be denied in its entirety.

Respectfully submitted this 1st day of April, 2024.

*/s/ Devon Orland*
Devon Orland
Georgia Bar No. 554301
**Georgia Advocacy Office**
One West Court Square, Suite 625
Decatur, GA 30030
Tel: (404) 885-1234
dorland@thegao.org

*/s/ M. Geron Gadd*
M. Geron Gadd*
**National Health Law Program**
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
Tel: (984) 278-7660
Fax: (919) 968-8855
gadd@healthlaw.org

Kimberly Lewis*
**National Health Law Program**
3701 Wilshire Boulevard, Suite 315

*/s/ D. Clay Holloway*
D. Clay Holloway
Georgia Bar No. 363296
James F. Bogan III
Georgia Bar No. 065220
Tamara S. Caldas
Georgia Bar No. 617053
Alfred S. Lurey
Georgia Bar No. 461500
Kathryn C. Ederle
Georgia Bar No. 940539
**Kilpatrick Townsend & Stockton LLP**
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309
Tel: (404) 815-6500
Fax: (404) 815-6555
cholloway@kilpatricktownsend.com
jbogan@ktslaw.com
tcaldas@ktslaw.com
alurey@ktslaw.com

Los Angeles, CA 90010
Tel: (310) 204-6010
Fax: (213) 368-0774
lewis@healthlaw.org

*/s/ Cathy E. Costanzo*
Cathy E. Costanzo*
Kathryn L. Rucker*
Mona Igram*
**Center for Public Representation**
5 Ferry Street, Suite 314
Easthampton, MA 01027
Tel: (413) 586-6024
Fax: (413) 586-5711
ccostanzo@cpr-ma.org
krucker@cpr-ma.org
migram@cpr-ma.org

*appearing pro hac vice*

kederle@ktslaw.com

*/s/ Michele Floyd*
Michele Floyd*
Samuel Z. Hyams*
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA USA 94111
Tel: (415) 576-0200
Fax: (415) 576-0300
mfloyd@ktslaw.com
shyams@ktslaw.com

*/s/ Catherine G. Lucas*
Catherine G. Lucas
Georgia Bar No. 567369
Zeke Van Keuren
Georgia Bar No. 332582
**Duane Morris LLP**
1075 Peachtree Street, NE, Suite 1700
Atlanta, GA 30309
Tel: (404) 253-6912
Fax: (404) 253-6901
klucas@duanemorris.com
zvankeuren@duanemorris.com

*Counsel for Plaintiffs Isaac A., Zack B., Leon C.,
Samuel D., and the Georgia Advocacy Office*

## L.R. 7.1(D) CERTIFICATION

I certify that **_Plaintiffs' Opposition to Defendants' Motion to Dismiss_** has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C). Specifically, this document has been prepared using 14-pt Times New Roman Font on this 1st day of April, 2024.

_/s/_ M. Geron Gadd
M. Geron Gadd

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

This 1st day of April, 2024.

_/s/_ M. Geron Gadd
M. Geron Gadd