IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ISAAC A., by and through next friend, A.A.; ZACK B., by and through next friend, B.B.; LEON C., by and through next friend, C.C.; SAMUEL D., by and through next friend, D.D., on behalf of themselves and those similarly situated; and THE GEORGIA ADVOCACY OFFICE, <br><br> Plaintiffs, <br><br> v. <br><br> RUSSEL CARLSON, in his official capacity as Commissioner of the Georgia Department of Community Health; KEVIN TANNER, in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities; CANDICE L. BROCE, in her official capacity as Commissioner of the Georgia Department of Human Services, <br><br> Defendants. | CIVIL NO. 1:24-cv-00037-AT |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States of America respectfully submits this Statement of Interest under 28 U.S.C. § 517[1] to provide its views regarding the interpretation and application of Title XIX of the Social Security Act (Medicaid Act), 42 U.S.C. § 1396 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; to this proposed class action alleging that Georgia officials have failed to provide children with mental health disabilities sufficient community-based services to avoid unnecessary institutionalization.  Specifically, the United States argues that (1) Plaintiffs have stated a claim for a violation of the "integration mandate" of Title II and Section 504 because they have adequately alleged that they are in—or at serious risk of entering—institutions and are appropriate for community-based services, do not oppose such services, and such services can be reasonably accommodated; (2) there is a private right of action under 42 U.S.C. § 1983 for Medicaid beneficiaries to sue for violations of the Medicaid rights at issue here; and (3) Plaintiffs have adequately alleged violations of these Medicaid rights.

## FACTUAL BACKGROUND

The four named Plaintiff children (Isaac A., Zack B., Leon C., and Samuel D.) are eligible for Medicaid, have serious behavioral health disabilities, and

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court.  28 U.S.C. § 517.

require intensive community-based services to treat their conditions and support their functioning.  Pl.'s Compl. ¶ 22-64, ECF No. 1 (Compl.).  They seek to represent a putative class of similarly situated children.  Compl. ¶ 65.  The Georgia Advocacy Office also brings this case as an associational plaintiff on behalf of the same group of children, who are its constituents.  Compl. ¶¶ 66-70.  Defendants, Russel Carlson, Kevin Tanner, and Candice Broce, are State commissioners who have responsibility for administering aspects of Georgia's mental health system for children.

Plaintiffs sued Defendants in their official capacities, seeking declaratory and injunctive relief.  Plaintiffs claim that Defendants (1) fail to meet their obligations under the Medicaid Act's Early and Periodic Screening, Diagnosis and Treatment (EPSDT) provisions, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4) & 1396d(r), and "reasonable promptness" requirement, 42 U.S.C. § 1396a(a)(8); and (2) discriminate against Plaintiffs on the basis of disability in violation of Section 504 and Title II.  Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Defs.' Mem. in Support of the Mot. to Dismiss, ECF No. 32-1 (Defs.' Mem.).[2]

---

[2] Defendants' motion to dismiss also argues that the named Plaintiffs and the Georgia Advocacy Office lack standing, that the complaint is a "shotgun pleading," that the claims are barred by sovereign immunity, and that the requested

## INTEREST OF THE UNITED STATES

The United States submits this Statement of Interest because this litigation implicates the proper interpretation and application of the integration mandate of Title II of the ADA, 42 U.S.C. § 12132; 28 C.F.R. § 35.130(d), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; 28 C.F.R. § 41.51(d).[3]  The Department of Justice (DOJ) is charged with issuing regulations implementing Title II and also enforces the statute.  42 U.S.C. §§ 12133–12134; 28 C.F.R. § 35.190.  DOJ therefore has an interest in supporting the proper interpretation and application of Title II, and in furthering Congress's intent to create "clear, strong, consistent, enforceable standards" addressing discrimination.  42 U.S.C. § 12101(b)(2).

In passing the ADA, Congress found that "society has tended to isolate and segregate individuals with disabilities" and that such individuals "continually encounter various forms of discrimination, including . . . segregation" and experience discrimination in "institutionalization."  *Id.* §§ 12101(a)(2), (3), (5). To address this history of segregation and isolation, the regulation implementing Title

---

relief will violate the Tenth Amendment.  The United States does not address those arguments in this Statement of Interest.

[3] "Given the textual similarities between [Title II and Section 504], the same standards govern claims under both, and [courts] rely on cases construing Title II and § 504 interchangeably. . . .  In other words, whatever [courts] have said . . . about Title II goes for § 504, and vice versa."  *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133-34 (11th Cir. 2019).  For this reason, this Statement primarily refers to Title II, but its arguments apply equally to Section 504.

II requires public entities to "administer services, programs, and activities" to people with disabilities "in the most integrated setting appropriate to the[ir] needs." 28 C.F.R. § 35.130(d).  The "most integrated setting" is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."  28 C.F.R. pt. 35, app. B at 711.  Public entities must reasonably modify their policies and practices to avoid discriminating on the basis of disability, unless such modifications would fundamentally alter the nature of a service, program, or activity.  *Id.* § 35.130(b)(7)(i).

The United States also has a strong interest in States' compliance with the requirements of the Medicaid Act, which established a cooperative federal-state program to provide medical care to eligible individuals.  The Department of Health and Human Services oversees States' compliance with Medicaid requirements.  42 C.F.R. § 430.15(b).  The Medicaid Act provides States with essential tools they can use to comply with Title II's integration mandate.

The Medicaid Act's EPSDT provisions lay out a mandatory and comprehensive program under which States must screen and treat eligible children for their physical and mental illnesses and conditions, 42 U.S.C. § 1396d(r)(5), *see also id.* §§ 1396a(a)(43); 1396d(a)(4)(B), and deliver those services in a reasonably prompt manner.  *Id.* § 1396a(a)(8).  When a State fails to provide adequate and reasonably prompt EPSDT services to children with disabilities, this failure can

5

lead to significant harms, including exacerbation of children's impairments, deterioration to the point of crisis, and unnecessary institutionalization in violation of the ADA.  For these reasons, the United States has a strong interest in the resolution of this matter.

## DISCUSSION

### I.    Plaintiffs have adequately pled a violation of the integration mandate of Title II and Section 504.

Despite Defendants' arguments to the contrary, Defs.' Mem. 43, 45-47, the complaint contains sufficient allegations of a violation of the integration mandate, which requires placement of individuals with disabilities in community settings rather than institutions when they are appropriate for community-based services, do not oppose such services, and when the placement can be reasonably accommodated.  *Olmstead v. L.C.*, 527 U.S. 581, 587 (1999).

Defendants argue that Plaintiffs Isaac A. and Zack B. have not sufficiently alleged they are appropriate for community-based services, Plaintiff Leon C. opposes such services, and that Plaintiff Samuel D. cannot allege a violation of the integration mandate when he is not currently institutionalized.  Defendants further contend that the modifications Plaintiffs seek are not reasonable and would amount to a fundamental alteration.  Each of these arguments fails, and this Court should

deny the motion to dismiss these claims.[4]

### A. Plaintiffs have sufficiently alleged that they are appropriate for community-based services and do not oppose such services.

Each of the Plaintiffs has alleged that he is appropriate for community-based services and does not oppose receiving such services.  *See* 527 U.S. at 587.

Plaintiffs Isaac A. and Zack B., who are currently institutionalized, allege that they "currently need" the Remedial Services and could be living in their own homes if such services were provided.[5]  Compl. ¶¶ 29, 33, 41, 44.  For example, Isaac A. alleges that he has experienced a pattern of institutionalization and after each stay, he is discharged with services other than the ones he needs, or none at all, causing him to reenter institutional settings.  Compl. ¶ 27-29, 31-33.  Zack B. alleges that he too has received insufficient services, and when he did receive a service that helped him avoid institutions, it was discontinued, causing repeated institutionalization.  Compl. ¶¶ 38-41, 43-44.

---

[4] Plaintiffs additionally claim that the Defendants' "methods of administering" Georgia's children's mental health service system "have the effect of subjecting" children with mental health disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130 (b)(3).  Specifically, Plaintiffs contend that Defendants fail to ensure such children can access needed services, employ arbitrary exclusions on services, and fail to make reasonable modifications to avoid violating the integration mandate.  Compl. ¶ 196.  Plaintiffs have sufficiently pled a violation of the relevant Medicaid provisions and the ADA's integration mandate, and this Statement does not address the additional claim.

[5] Defendants do not dispute that Leon C. and Samuel D., are appropriate for community-based services.  Defs.' Mem. 46.

In determining whether a complaint states a claim, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019). Allegations like this are sufficient to plead appropriateness. *See Georgia Advoc. Off. v. Georgia*, 447 F. Supp. 3d 1311, 1323 (N.D. Ga. 2020) (explaining that a description of why the plaintiffs are appropriate for the community is sufficient to survive a motion to dismiss, as "some determination from a professional" is not needed at this stage); *see also M.J. v. District of Columbia*, 401 F. Supp. 3d 1, 13 (D.D.C. 2019) ("At this stage of the litigation, plaintiffs have alleged that they are able to live in their homes and communities, if the [State] provided the required treatment; these allegations are enough to meet the pleading standards. At a later stage, plaintiffs will be required to provide evidence to back up their claims that community-based treatment was appropriate, but that requirement will not be imposed on them at [the 12(b)(6)] stage.").

Defendants argue that to plead their appropriateness for community-based services, Plaintiffs need to allege that they have recommendations from "their physicians" for community placement.[6] But courts have made clear that a prior

---

[6] To the extent that Defendants' use of the term "physician" implies a view that only a medical doctor could make such a recommendation, they cite to no authority for that proposition. On the contrary, cases considering evidence that professionals have found plaintiffs appropriate for community-based services generally refer to "professionals" and make no distinctions regarding the training

professional recommendation for community-based services is not necessary to plead appropriateness in a complaint, as a plaintiff "would not have an occasion to be assessed for programs that should, but do not, exist." *M.J.*, 401 F. Supp. at 12-13; *see also, e.g., Disability Advocates, Inc. v. Paterson,* 653 F. Supp. 2d 184, 259 (E.D.N.Y. 2009) (rejecting the argument that a plaintiff must present evidence that he or she has been assessed by a "treatment professional" and found eligible to be served in a more integrated setting to be considered appropriate), *vacated on other grounds sub nom. Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012); *Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 539-40 (E.D. Pa. 2001) (rejecting the argument that the integration mandate "require[s] a formal recommendation for community placement").

Conceding that Plaintiff Leon C. has pled that he is appropriate for community-based services, Defendants argue that he nonetheless opposes them because his parent, C.C., "was reluctant to accept any transition plan that did not provide intensive home and community-based services," Compl. ¶ 53, in October 2022 when Leon was deemed ready for discharge.  Defs.' Mem. 47.

But the non-opposition inquiry does not ask whether institutionalized individuals are seeking discharge *now*, notwithstanding a state's failure to provide

---

or licensure of those professionals.  *See, e.g.*, *Olmstead*, 527 U.S. at 587; *Georgia Advoc. Off.*, 447 F. Supp.3d at 1323; *United States v. Georgia*, 461 F. Supp. 3d 1315, 1323 (N.D. Ga. 2020).

the services they need as accommodations.  Rather, an individual "is 'non-opposed' within the meaning of *Olmstead*" if she "would be open to choosing community-based services *if such services were available and accessible*."  *United States v. Florida*, 2023 WL 4546188, at *51 (S.D. Fla. July 14, 2023) (emphasis added), *appeal pending*, No. 23-12331 (11th Cir.); *see also Kenneth R. v. Hassan*, 293 F.R.D. 254, 270 n.6 (D.N.H. 2013) ("[T]he meaningful exercise of a preference [between community services and institutional care] will be possible only *if* an adequate array of community services are available.").  Indeed, a standard looking only to present-day circumstances "would defeat the purpose of the integration mandate."  *Florida*, 2023 WL 4546188, at *47.

Because, as Plaintiffs have alleged here, the community-based services Plaintiffs seek are not being provided, C.C. has not yet been able to make a meaningful choice.  But Plaintiffs' complaint more than adequately alleges that *if* those services were available, C.C. would want her son home and is thus unopposed to community-based placement.  The complaint explains that C.C.'s reluctance to bringing her son home in 2022 was due to the lack of community-based services, not another reason.  The complaint alleges that C.C. has "continued to insist on the provision of services in [Leon's] home and community," and that she "wants her son to come home with his family."  Compl. ¶ 53.

**B. Individuals facing a serious risk of unnecessary institutionalization are protected by the integration mandate**

Defendants argue that Plaintiff Samuel D. cannot assert a claim under the integration mandate because, despite a long history of institutionalization and the ever-present threat of recurring institutionalization, he happened to be living at home at the time of the filing of the complaint.

Contrary to Defendants' assertion, a plaintiff can state a claim alleging a violation of the ADA if the plaintiff is unnecessarily institutionalized or at serious risk of unnecessarily institutionalization. *Georgia Advoc. Off.*, 447 F. Supp.3d at 1323; *Hunter v. Cook*, 2011 WL 4500009, at *5 (N.D. Ga. 2011).

Although the Eleventh Circuit has never ruled on the issue, six out of seven federal appellate courts that have considered the question have correctly concluded that an individual in the community who is at serious risk of entering an institution unnecessarily can bring a claim under the integration mandate. *See Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016); *Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 460-61 (6th Cir. 2020); *Steimel v. Wernert*, 823 F.3d 902, 914 (7th Cir. 2016); *M.R. v. Dreyfus*, 697 F.3d 706, 734-35 (9th Cir. 2012); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003). Defendants cite none of those cases, relying only on the outlier decision, *United States v. Mississippi*, 82 F.4th 387, 392-93 (5th

Cir. 2023). But the decision in *Mississippi* is wrong, anomalous, and not binding upon this Court.

The conclusion reached by the large majority of the federal appellate decisions that the ADA bars states from placing an individual with a disability at serious risk of needless institutionalization is well supported. The integration regulation provides that States "shall administer services" in the "most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. 35.130(d). There is no indication in that text that "institutionalization is a prerequisite to enforcement" of the integration mandate. *Davis*, 821 F.3d at 263 (citation omitted).

This understanding is consistent with the ADA's statutory language as explained in *Olmstead*. There, the Supreme Court concluded that unnecessary institutionalization is a form of unlawful "discrimination" under the ADA because, "to receive needed medical services," individuals with disabilities must "relinquish participation in community life they could enjoy given reasonable accommodations," while persons without disabilities "can receive the medical services they need without similar sacrifice." 527 U.S. at 601. Plaintiffs alleged that Samuel D. and others like him are currently experiencing such "discrimination" under the ADA. Unlike individuals without disabilities, children like Samuel D. must "choose between forgoing necessary medical services while

remaining in the community or receiving necessary medical services while institutionalized." *Waskul*, 979 F.3d at 460.

Moreover, the integration mandate "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." *Fisher*, 335 F.3d at 1181. For all these reasons, the Department of Justice has issued guidance explaining that *Olmstead* extends to persons at serious risk of institutionalization.[7]

In any event, a plaintiff may bring a Title II claim when "the threatened injury [here, unnecessary institutionalization] is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The court would have the authority to grant appropriate equitable relief to prevent imminent and unnecessary institutionalization *Olmstead* indisputably proscribes. *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) ("[I]t is . . . well-established that injunctive relief is appropriate to

---

[7] *See* U.S. Dep't of Justice, *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C., Q. 6* (last updated Feb. 25, 2020), www.ada.gov/olmstead/q&a_olmstead.htm. The integration regulation is clear, but even if were not, DOJ's longstanding, authoritative, expertise-based guidance is at least a reasonable interpretation of DOJ's regulation and warrants deference under *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-18 (2019).

prevent a substantial risk of serious injury from ripening into actual harm.").

According to Defendants, a plaintiff who has experienced repeated unnecessary institutionalization and is still not receiving services in the most integrated setting appropriate to his needs must wait to reenter an institution to receive the protection of the integration mandate.  Then, he can file a claim, but he cannot pursue it when he again gets discharged without adequate services to prevent recurrence of unnecessary institutionalization.  This would render the integration mandate "meaningless," *Fisher*, 335 F.3d at 1181.  Defendants' argument is unsupported by the ADA, its implementing regulations, or *Olmstead*, and should be rejected.

### C. Plaintiffs have adequately alleged modifications to Georgia's service system that can reasonably be accommodated.

Although Defendants argue that Plaintiffs' requested relief would amount to a fundamental alteration of Georgia's mental health program, Plaintiffs only seek reasonable modifications of Georgia's mental health services for children.  Georgia already offers some care coordination, intensive family-based services and crisis services to children, but fails to make these services available to all children who need them when they are needed and at the level of intensity and duration needed.  Compl. ¶¶ 145, 149-160, 163-169, 175-181.  Modifications are reasonable when they merely seek to expand the reach of existing services, especially when the

proposed modifications "align with the jurisdiction's own stated plans and obligations." *United States v. Florida*, 2023 WL 4546188, at \*54; *see also, e.g.*, *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1304-05 (M.D. Fla. 2010) (providing a service already in state's service system to additional people is not inherently a fundamental alteration); *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 344-45 (D. Conn. 2008) (finding that plaintiffs' requested service expansion, which was consistent with defendants' publicly stated plans, was reasonable). Here, Plaintiffs allege that Georgia already *intends* to provide services to children like Plaintiffs to meet their needs.  Compl. ¶¶ 135-144.  Defendants cite *Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999) for the proposition that the ADA does not support a claim for an entirely new service.  But in *Rodriguez*, the jurisdiction did not offer and was not obligated to offer the service sought.  *Id.* at 619.  Here, providing the services that Plaintiffs seek is *required* under EPSDT.  42 U.S.C. §§ 1396a(a)(43), 1396d(a)(4), 1396d(r).  It is a reasonable modification for the State to conform its program to meet existing federal law obligations.

Further, although Defendants argue that the modifications Plaintiffs request would amount to a fundamental alteration, this is an affirmative defense that is not appropriate for resolution on a motion to dismiss.  *See Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 153 (2d Cir. 2013) ("It is a factual issue whether a plaintiff's proposed modifications amount to 'reasonable modifications' which

should be implemented, or 'fundamental alterations,' which the state may reject.)

## II.  Medicaid beneficiaries can sue state officials for violations of the Medicaid Act provisions at issue here.

Defendants' assertion that Plaintiffs do not have a private right of action under 42 U.S.C. § 1983 to enforce provisions of the Medicaid Act is foreclosed by decades of precedent, as described in the Supreme Court's recent decision in *Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166 (2023).  The Supreme Court has long held that suits filed under 42 U.S.C. § 1983 can seek redress for violations of rights secured by federal statutes—including the Social Security Act, which is at issue here.  *See Maine v. Thiboutot*, 448 U.S. 1, 8 (1980). Section 1983 creates a cause of action against persons acting under color of state law for deprivations of "rights . . .  secured by the constitution and laws," and the Supreme Court has interpreted the word "laws" to include all federal statutes.[8]  *See Talevski*, 599 U.S. at 180.

Echoing the arguments evaluated in *Talevski*, Defendants suggest that federal statutes passed pursuant to the Spending Clause cannot create rights that

---

[8] Defendants also briefly argue that there is no cause of action under § 1983 because this lawsuit is against the state, not a "person."  But the Supreme Court has long held that "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

can be redressed through a § 1983 lawsuit.  The Supreme Court considered this argument and rejected it, declining to "flatly overrule a number of major decisions of this Court" and reaffirming that beneficiaries of Social Security Act programs generally, and the Medicaid Act specifically, can use § 1983 to vindicate rights created by those laws.  *Talevski*, 599 U.S. at 179.  Revealingly, Defendants cite only non-binding concurrences in *Talevski* in support of their view that this Court should abandon longstanding precedent.  Defs.' Mem. at 30.  But the Supreme Court did not do so, and this Court is not free to do so.

Defendants correctly note that not every provision in a Spending Clause statute creates rights enforceable via § 1983, but it is well-settled that the provisions at issue here do create such rights.  The Eleventh Circuit has explained:

> A three-part test determines whether Spending Clause legislation, such as the Medicaid Act, creates a right of action under § 1983: (1) Congress must have intended that the statute in question benefit the plaintiff; (2) the asserted right must not be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must clearly impose a mandatory obligation upon the states.

*Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1326 (11th Cir. 2012) (describing the test articulated in *Blessing v. Freestone*, 520 U.S. 329 (1997)).

In *Gonzaga v. Doe*, 536 U.S. 273, 283 (2002), the Supreme Court emphasized that there must be an "unambiguously conferred right" in federal law

to support a § 1983 action.  The Eleventh Circuit has since explained that when evaluating the first *Blessing* prong—Congressional intent to confer a right—courts should consider factors including whether "the statute (1) contains 'rights-creating' language that is individually focused; (2) addresses the needs of individual persons being satisfied instead of having a systemwide or aggregate focus; and (3) lacks an enforcement mechanism through which an aggrieved individual can obtain review." *31 Foster Children v. Bush*, 329 F.3d 1255, 1270 (11th Cir. 2003).

As this Court noted in *William v. Horton*, "courts that have considered the EPSDT provisions and similarly worded Medicaid Act provisions have uniformly found the provisions are enforceable under Section 1983" since *Blessing* and *Gonzaga* were decided.  2016 WL 6582682, at *5 (N.D. Ga. 2016); *see Bontrager v. Ind. Fam. and Soc. Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012); *Watson v. Weeks*, 436 F.3d 1152, 1161-62 (9th Cir. 2006); *S.D. v. Hood*, 391 F.3d 581, 602-606 (5th Cir. 2004); *Sabree v. Richman*, 367 F.3d 180, 189-92 (3d Cir. 2004); *Westside Mothers v. Haveman*, 289 F.3d 852, 863 (6th Cir. 2002); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 478-79 (8th Cir. 2002).

Indeed, this Court has reached that conclusion every time it has considered this issue.  *See William*, 2016 WL 6582682, at *5; *Hunter v. Medows*, 2009 WL 5062451, at *2-3 (N.D. Ga 2009); *Kenny A. v. Perdue*, 218 F.R.D. 277, 293-94

18

(N.D. Ga. 2003).  The Medicaid Act's "reasonable promptness" provision,

similarly, has repeatedly been found to be enforceable via § 1983.  *See Doe 1-13 v.*

*Chiles*, 136 F.3d 709, 719 (11th Cir. 1998); *see also*, *e.g.*, *Doe v. Kidd*, 501 F.3d

348, 356-57 (4th Cir. 2007); *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002).

Without citing a single example of a court finding these provisions unenforceable

under § 1983, Defendants ask this Court to depart from the decisions of courts

throughout the country and adopt their novel view that these provisions are

unenforceable.  There is no basis for this Court to do so.

Starting with the EPSDT provisions and the first *Blessing* factor, each

provision is written in terms of individual rights.  *See* 42 U.S.C. § 1396a(a)(10)(A)

(the state will make medical assistance available to "all individuals" who meet

certain criteria); § 1396a(a)(43) (the state must "arrang[e] for . . . corrective

treatment" that individual children need); § 1396d(a)(4) (EPSDT services must be

available "for individuals who are eligible under the plan and are under the age of

21"); § 1396d(r) (defining EPSDT services to be made available to individual

children).  These individually focused treatment rights for children "are precisely

the sort of 'rights-creating' language identified in *Gonzaga* as critical to

demonstrating a congressional intent to establish a new right."  *S.D.*, 391 F.3d at

603; *see also Sabree*, 367 F.3d at 190 (explaining that it is "difficult, if not

impossible, as a linguistic matter, to distinguish" this language from the federal

19

statutory language that the Court's opinion in *Gonzaga* explains is enforceable).

Not only are these provisions clearly focused on individual rights to treatment for covered children, they also "lack an enforcement mechanism" for those children other than a § 1983 suit.  *See Kenny A.*, 218 F.R.D. at 290; *see also 31 Foster Children*, 329 F.3d at 1272-73 (explaining that the federal government's ability to withhold funds from a state is not an individual enforcement mechanism).

Turning to the second *Blessing* factor, the EPSDT provisions are not so "vague and amorphous" that their enforcement would "strain judicial competence." 520 U.S. at 340-31.  Rather, they merely ask the court to interpret the meaning of the specific EPSDT guarantees.  "That level of statutory analysis does not 'strain judicial competence;' it is the sort of work in which courts engage every day.  The EPSDT provisions at issue are no more 'vague and amorphous' than other statutory terms" that courts have found capable of judicial enforcement.  *S.D.*, 391 F.3d at 605; *see also Kenny A.*, 218 F.R.D. at 294.  And, with respect to the third *Blessing* factor, there is a mandatory obligation; any State that participates in Medicaid must comply with EPSDT.  *Id.*; *see also Doe 1-13*, 136 F.3d at 718.

The analysis above applies equally to Medicaid's "reasonable promptness" provision, 42 U.S.C. § 1396a(a)(8), and the Eleventh Circuit has already applied the *Blessing* test to hold that this provision is enforceable via § 1983.  *Doe 1-13*, 136 F.3d at 718.  Although *Gonzaga* postdates *Doe*, the right to "reasonable

promptness" plainly comports with *Gonzaga*'s test.  Section 1396a(a)(8) has

individual rights-creating language (states must "furnish" medical assistance "with

reasonable promptness to all eligible individuals"), focuses exclusively on an

individual level; and cannot be remedied through another private enforcement

mechanism.  *See Sabree*, 367 F.3d at 190 (explaining, post-*Gonzaga*, that

"Congress conferred [a] specific entitlement[] on individuals in terms that could

not be clearer" when requiring care to be provided with reasonable promptness).

In short, the enforceability via § 1983 of these Medicaid provisions is

overwhelmingly evident from years of well-reasoned cases, and this Court has no

reason to deviate from these holdings.

### III.   Plaintiffs have stated a claim for violations of the EPSDT provisions and the reasonable promptness requirement.

Plaintiffs have sufficiently pled a deprivation of their rights under the

Medicaid Act.   The Medicaid Act "impose[s] a mandatory duty upon

participating states to provide EPSDT-eligible children with all the health

care, services, treatments and other measures described in § 1396d(a) of the

Act, when necessary to correct or ameliorate health problems discovered by

screening, regardless of whether the applicable state plan covers such

services."  *S.D.*, 391 F.3d at 589-90.  The Eleventh Circuit has described the

EPSDT provisions as a "clear mandate."  *Pittman v. Sec'y, Fla Dep't of Health*

*& Rehab. Servs.*, 998 F.2d 887, 891 (11th. Cir. 1993).[9]

The services enumerated in 42 U.S.C. § 1396d(a), which must be provided to children who need them, *id.* §§ 1396d(a)(4)(B) and (r)(5), 1396a(a)(43), include the "Remedial Services" Plaintiffs seek here: intensive care coordination, in-home services, and crisis response services. Compl. ¶¶ 145-181. As the agency that administers Medicaid explained: "The goal of the EPSDT benefit is to ensure that individual children get the health care they need in the right place when they need it. . . . This includes coverage of intensive community-based services, crisis stabilization, and intensive care coordination to meet the needs of high-risk children and youth."[10] These services must be provided to all, not merely some,

---

[9] Defendants cite *Troupe v. Barbour*, 2013 WL 12303126, at *4 (S.D. Miss. 2013), for the proposition that EPSDT services are not owed to Plaintiffs because they have not pled that they have "requested" a screening pursuant to 42 U.S.C. § 1396a (43)(B). In *Troupe*, the plaintiffs "conceded that they ha[d] not requested anything from Defendants—screening, treatment, or otherwise." *Id.* at *4. But here, the Complaint discusses numerous occasions on which Plaintiffs sought or received services from Defendants. Compl. ¶¶ 22-64. Importantly, requests for screening pursuant to § 1396a (43)(B) need not take any particular form. Rather, the federal government has explained: "The family or beneficiary need not formally request an EPSDT screening in order to receive the benefits of EPSDT. Rather, any visit or contact with a qualified medical professional is sufficient to satisfy EPSDT's screening requirement." Ctrs. for Medicare & Medicaid Servs., *EPSDT: A Guide for States*, June 2014, at 6, https://www.medicaid.gov/sites/default/files/2019-12/epsdt_coverage_guide.pdf. Each Plaintiff describes a long list of contacts with providers; these contacts are sufficient to establish that screening has been requested. Compl. ¶¶ 22-64.

[10] CMCS Informational Bulletin: *Leveraging Medicaid, CHIP, and Other Federal Programs in the Delivery of Behavioral Health Services for Children and*

children who need them.[11]  *See Chisholm v. Hood*, 133 F. Supp. 2d 894, 901 (E.D.

La. 2001) (state violated EPSDT requirements despite provision of services to

some children); *Memisovski v. Maram*, 2004 WL 1878332, at *56 (N.D. Ill. 2004).

The obligations to provide the services Plaintiffs seek come from the

Medicaid statute.  First, § 1396d(a)(19), together with the EPSDT provisions at §

1396a(a)(43) and § 1396d(r), requires states to offer children "case management

services," which may include intensive care coordination.  "Case management"

services include efforts to "assist individuals . . . in gaining access to needed

medical, social, educational, and other services" and includes detailed assessments,

development of a care plan, "activities to help . . . obtain needed services," and

"[m]onitoring and followup activities."  42 U.S.C. § 1396n(g)(2).  The courts that

have considered EPSDT claims for intensive care coordination geared toward

children with mental health disabilities have made clear that such services must be

available to those children.  *See Katie A. v. Los Angeles Cnty.*, 481 F.3d 1150,

1160-61 (9th Cir. 2007) (confirming that reasonably effective case management

---

*Youth*, Aug. 18, 2022, at 7, https://www.medicaid.gov/federal-policy-guidance/downloads/bhccib08182022.pdf.

[11] Defendants highlight that states have discretion in exactly how to implement the EPSDT mandate.  But states must still "meet the substantive requirements of the federal Medicaid Act," *Moore v. Reese*, 637 F.3d 1220, 1238 (11th Cir. 2011), and here, Plaintiffs sufficiently allege that the Defendants have failed to do so.

services must be offered to children); *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 52-53 (D. Mass. 2006) (same).

Similarly, states must offer children "rehabilitative services," including:

> any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner . . . for the maximum reduction of . . . mental disability and restoration of an individual to the best possible functional level.

42 U.S.C. § 1396d(a)(13).  The rehabilitative services category is broad and includes a wide range of supportive services, including in-home behavioral supports and crisis services.  *See Katie A.*, 481 F.3d at 1159-60 (affirming that states must provide children adequate in-home behavioral support services under EPSDT); *Pediatric Specialty Care, Inc.*, 293 F.3d at 480-81 (EPSDT requires states to provide community-based early intervention day treatment to children as rehabilitative services); *Rosie D.*, 410 F. Supp. 2d at 52-53 (EPSDT requires adequate in-home behavioral services including crisis supports); *Chisholm,* 133 F. Supp. 2d at 901 (explaining that intensive behavioral interventions for autistic children are required rehabilitative services under EPSDT); *see also EPSDT: A Guide for States*, at 11-12[12] (explaining that rehabilitative services are "particularly critical for children with mental health  . . . issues" and include crisis services and individualized mental health treatments in a range of settings).

---

[12] https://www.medicaid.gov/sites/default/files/2019-12/epsdt_coverage_guide.pdf

The crux of Defendants' arguments is that the Remedial Services the Plaintiffs seek are not medically necessary because none of the Plaintiffs allege that a physician prescribed the services.  Defs.' Mem. 37-39, 41.  But, as discussed *supra* in Section I.A., the Complaint includes specific allegations that each Plaintiff needs these services.  Compl. ¶¶ 33, 44, 54, 64.  Defendants may dispute that Plaintiffs need the services, but this is a factual issue that is inappropriate for resolution in a motion to dismiss.  *See J.E. v. Wong,* 125 F. Supp. 3d 1099, 1108 (D. Haw. 2015) (explaining that the question of whether the treatment sought "is, in fact, a medically necessary treatment" under EPSDT is not before the court on a motion to dismiss); *see also Murphy v. Minn. Dep't of Hum. Servs.*, 260 F. Supp. 3d 1084, 1107 (D. Minn. 2017) (finding that "that [p]laintiffs have stated a viable reasonable promptness claim based on [d]efendants' alleged failure to ensure reasonably prompt access to the . . . services they seek.").  This Court should find that Plaintiffs have adequately pled a violation of the EPSDT and "reasonable promptness" requirements.

## CONCLUSION

Accordingly, this Court should find that Plaintiffs: (1) have stated a claim for a violation of the integration mandate of Title II and Section 504; (2) have a private right of action under 42 U.S.C. § 1983 to pursue their Medicaid claims here; and (3) have adequately alleged a violation of those Medicaid rights.

25

Respectfully submitted this 22nd day of April, 2024.

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

AILEEN BELL HUGHES
Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
Tel: 404-581-6000
aileen.bell.hughes@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

BENJAMIN O. TAYLOE, JR.
Deputy Chief
Special Litigation Section

*/s/ Beth Kurtz*_____
BETH KURTZ
D.C. Bar No. 1022970
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section—4CON
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: 202-598-9616
beth.kurtz@usdoj.gov

*Attorneys for the United States of America*

## **L.R. 7.1(D) CERTIFICATION**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1(C), using Times New Roman font with a point size of 14.

Dated:  April 22, 2024                         */s/ Beth Kurtz*
                                                                Beth Kurtz

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  April 22, 2024                         */s/ Beth Kurtz*
                                                                Beth Kurtz